JOBE *v.* DILLARD.

*(Jackson.* May 30, 1900.)

1. WILLS. *Trustee controls estate, when.*

The trustee, not the beneficiary, controls devised realty, collects its rents, and keeps up repairs and pays taxes thereon, where a mother, intending to provide for an improvident and dissolute son and his family, bequeaths, by a will inartificially drawn by an inexpert draughtsman, all her estate " in trust to my son [naming him] for his use and benefit, and emoluments arising therefrom, after paying taxes and necessary repairs, withholding from him, my son, . . . power to sell and convey . . . except at the option of the trustee hereinafter appointed, the said trustee to have the power to grant and sell when, in his judgment, he deems it necessary and advisable, and in such event the conveyance to be a joint act between the said trustee and my son, . . . and I now herein appoint my cousin [naming him] trustee. . . . It is my wish, . . . and I herein instruct the said trustee, should my son . . . die without issue, then all of said estate so remaining in trust shall, by him, be sold and divided between all of said parties above mentioned, equally." *(Post, pp. 659–664.)*

2. SAME. *Construction of.*

To effectuate a manifest intention of the testator, the Courts will transpose, reject, or supply words, especially where it is apparent that the will has been inartificially drawn by an ignorant or inexperienced draughtsman. *(Post, pp. 660–662.)*

Cases cited: Reid *v.* Hancock, 10 Hum., 368; Williams *v.* Williams, 10 Yer., 20; Simpson *v.* Smith, 1 Sneed, 394; Gourley *v.* Thompson, 2 Sneed, 387; Seay *v.* Young, 2 Head, 418; Massie *v.* Jordan, 1 Lea, 646; Harwell *v.* Benson, 8 Lea, 344; Jourolmon *v.* Massengill, 86 Tenn., 82; Davis *v.* Williams, 85 Tenn., 646.

FROM    SHELBY.

Appeal from the Chancery Court of Shelby County.    F. H. HEISKELL, Ch.

L. T. M. CANADA and J. H. MALONE for Jobe.

SMITH & TREZEVANT for Dillard.

BEARD, J. This is a controversy requiring the construction of the will of the late Mrs. Fannie G. Jobe, which is in these words:

"I, Fannie G. Jobe, . . . make this my last will. . . . I give . . . and bequeath my estate, real and personal estate, as follows: that is to say, all of the real estate that I may be possessed of at my death, . . . in trust to my son, Samuel I. Jobe, for his use and benefit, and emoluments arising therefrom, after paying taxes and necessary repairs, withholding from him, my son, . . . power to sell and convey . . . except at the option of the trustee hereinafter appointed, the said trustee to have the power to grant and sell when, in his judgment, he deems it necessary and advisable, and in such event the conveyance to be a joint act between the said trustee and my son, . . . and I now herein appoint my cousin, J. E. Dillard, trustee. . . . It is my wish, . . . and I herein instruct the said trustee, should my son . . . die without issue, then all of said real estate so remaining in trust shall by him be sold and divided between all of said parties above mentioned, equally."

The controversy is as to the right to control this real estate, collect the rents arising therefrom,

pay the taxes, and keep it in repair during the life of S. I. Jobe—whether this right is with him or Dillard, the trustee.

The record shows that the beneficiary of this will has been unfortunate, dissolute, and improvident. He had during widowhood of testatrix, covering a period of fifteen or more years, given his mother much concern. For many years before her death he had been practically out of employment. He was in bad health and a married man. In making this will it is apparent upon its face that these conditions were present to her mind, and that her purpose was to provide for her son, and yet place the provision beyond misfortune or imprudence. And in this will she sought to create a trust, and the question is, Did she do so?

As will be readily seen, the will is very inartificial; it was drawn by an inexpert draughtsman, and one who no doubt knew the desire of the testatrix, and sought to express it, but did so in a most unskillful way. But "in the construction of wills the most unbounded indulgence has been shown to the ignorance, unskillfulness, and negligence of testators; no degree of technical informality or of grammatical or orthographical error, nor the most perplexing confusion in the collocation of words or sentences, will deter the judicial expositor from diligently venturing on the task of eliciting from the contents of the instrument the intention of the author, the faintest trace of

Jobe *v.* Dillard.

which will be sought out from every part of the will, and the whole carefully weighed together." 1 Jarman on Wills, 643. It is also established that when it is clear in the face of the will that the testator has not accurately expressed his meaning by the words used, and what words he has omitted, those words may be supplied to effectuate his intention. 2 Jarman, 60. And another rule is that where a clause, otherwise senseless and contradictory, can be rendered consistent with the context by being transposed, the courts are warranted in making the transposition. *Idem,* page 75. To accomplish the same end, they may also change words. *Idem,* page 80.

These rules are admirably condensed in Mr. Pritchard's excellent work on Wills and Administrations, Sec. 395, as follows: "Where a strict adherence to grammatical construction would frustrate the intention of the testator, or where the words are so unintelligible or absurd that they have no place in, and can give no effect to, the testator's manifest legal intention, and there cannot be a rational construction of the words as they stand, the Courts may, in order to effectuate the testator's intention, transpose, reject, or supply words." In support of his text, and as applying one or more of the rules of construction, the author cites *Reid* v. *Hancock,* 10 Hum., 368; *Williams* v. *Williams,* 10 Yer., 20; *Simpson* v. *Smith,* 1 Sneed, 394; *Gourley* v. *Thompson,* 2

Sneed, 387; *Seay* v. *Young*, 2 Head, 418; *Massie* v. *Jordan,* 1 Lea, 646; *Harwell* v. *Benson,* 8 Lea, 344; *Bartlett* v. *King,* 12 Mass., 537 (S. C., 7 Am. Dec., 99.)

These rules are adopted by the Courts with the view of making effectual the intention of the testator; for in the construction of wills this intention rules, and, when ascertained, will control the technical terms used. *Jourolmon* v. *Massengill,* 86 Tenn., 82.

Bearing these rules in mind, an effort will be made to see whether the intention to create a trust for her son has been accomplished by the testatrix, or has failed by reason of the want of art in drafting this instrument.

As has been already said, her evident purpose was to create a trust, and also to make a trustee. She does both in terms. As to the trustee, the design of the testatrix was to place the legal title of her real property in him; for she provides that, as to any part of it remaining undisposed of at the death of her son, without issue, this trustee shall sell it for division among the parties named in other parts of her will. This intention to vest the title is most apparent from this clause, just referred to, as follows: " Said real estate so remaining in trust shall by *him* be sold." "Remaining in trust"—where and with whom? Certainly not in the son, because this clause comes into operation only on his death without issue.

Evidently it could only remain in trust with the one to whom the trust had already been given, and that is the defendant, Dillard, who is to execute it. But if the will is to be construed literally, while undertaking to create a trust and naming a trustee, yet she has failed to vest him with the title, and she had given him no power as to the real estate, save that of a veto in the effort of the son to sell it, and then to sell for the purpose of division what might remain of it, in the event the contingent remainders become vested.

. In addition, while endeavoring to create this trust for her son, the will, if read as is insisted it should be by his counsel, makes him the trustee for himself. " I give," etc., " to my son," etc., "for his use and benefit," etc., "emoluments arising therefrom, after paying taxes and necessary repairs," etc. Did the testatrix intend to confide this trust for himself to him for execution? We think not.. Was it her purpose to devise to this unfortunate son the rents and profits of this estate for life (*Davis* v. *Williams,* 85 Tenn., 646), and leave it to him at his pleasure to look after taxes, etc.? The whole rents and profits were not given to him; it was only the residuum, after " paying taxes," etc., that was given for his use and benefit.

We think this will can be read so as to accomplish what seems to us the manifest intention

of the testatrix within the rules of construction already adverted to. To do this requires little transposition and but a slight change in its phraseology. When this is done, the will then reads: "I give and devise to J. E. Dillard, in trust for my son," etc., "for his use and benefit," etc. This reading gives the trustee control of the rents to pay taxes and make necessary repairs and apply the excess to the use and benefit of the son, and places him in a position to hold the title to protect the contingent remainders created by the will.

The Chancellor's decree adopting a different construction is reversed and the bill is dismissed. The cost of the cause will be paid by the trustee out of the trust funds coming to his hands.