Glasscock *v.* Tate.

## GLASSCOCK *v.* TATE.

### (*Jackson.* June 24, 1901.)

1. WILL. *Creates active trust.*

A will creates an active trust and invests the trustee with legal title for the purposes of the trust, including the power to maintain suit for protection of the trust estate, which, after devising testatrix's realty to her two sons during their lives, with remainder upon their death to their children, who should live to attain majority, and in default of such children, to a charitable use, provides for appointment of a trustee to rent out the lands, and pay taxes, and distribute the residue of the rents between her two sons. (*Post, pp. 487–492.*)

Cases cited: Jourolmon *v.* Massengill, 86 Tenn., 82; Jobe *v.* Dillard, 104 Tenn., 658.

2. SAME. *Proper construction of.*

Under such will the testatrix's two sons do not take as joint tenants, with right of survivorship, but they take several interests as tenants in common. Upon the death of one son, leaving a minor child, the trustee holds the estate equally for such child and the surviving son, until the child attains its majority, when he is invested with the full legal title to one-half of the estate, and the trust continues to the surviving son only. Should the child die before attaining majority, his one-half of the estate goes, not to the surviving son of testatrix, but to the designated charitable use. So the interest of a son who dies leaving no child goes to said charitable use. (*Post, pp. 491–498.*)

Cases cited: Smith *v.* Metcalf, 1 Head, 64; Smith *v.* Thompson, 2 Swan, 385.

3. SAME. *Same.*

Notwithstanding the devise in this will is to the two sons "during *their* lives," with remainder to "the heirs of *their* body," to take effect "at *their* death," the Court finds, in the relation of the parties, and in the general tenor of this will, such indications, which by law need only be slight, as justifies

Glasscock *v.* Tate.

the construction that testatrix intended her sons to take several and distributable interests, which, upon the death of each son, was cast upon his children. (*Post, pp. 491–498.*)

4. DECREE. *Invalid, when.*

A decree is invalid, for want of power in the Court to render it, which undertakes, even with the consent of the beneficiary, especially when he is an infant, to set aside a trust created by will for his benefit, and denude the trustee of his estate and powers. Courts will preserve, but never destroy a trust of this character. (*Post, p. 492.*)

5. SAME. *Same.*

A decree for partition of land is invalid where the holder of the legal title and contingent remaindermen were not made parties to the case in which it was rendered. (*Post, p. 498.*)

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. F. H. HEISKELL, Ch.

CARROLL, McKELLAR & BULLINGTON for Glasscock.

FINLAY & FINLAY, L. T. M. CANADA, and J. J. DuBose for Tate.

CALDWELL, J. On October 19, 1873, Lucy A. Tate, a widow, died testate at her residence in Memphis, Tenn. Her will, which was duly probated in September, 1874, is in the following language, namely:

"TUESDAY, June 27, 1871.

"I, Lucy A. Tate, of the county of Shelby and State of Tennessee, and city of Memphis, being of

sound mind and memory, and considering the uncertainty of this frail, transitory life, do, therefore, make, ordain, publish, and declare this to be my last will and testament. That is to say: First, after all my lawful debts are paid and discharged, the residue of my real estate I loan to my two sons, Jesse M. Tate and Bowden G. Tate, during their natural lives. I desire a trustee appointed, and the places rented out, and, after the taxes. are paid, the remainder, whatever it may be, divided equally between my two sons. My estate consists of eight and a half acres, more or less, known as my home place, on the north side of Tate street, between Orleans and McKinley streets, and at their death then to go to the heirs of their body—if said heirs should live to be of age—and said children must be of lawful marriage. If my two sons should have no such heirs as I have mentioned, I then will and devise the above described home place to the Cumberland Presbyterian University at Lebanon, Tenn., the same to be sold or kept as the said trustees of said university shall think best. And I further order that this devise be used as a fund for the education of young men in the said university studying for the ministry of said church, and for none other. This is my will, and I leave it all in the hands of God, to do with it as he in his infinite wisdom may direct. Amen. LUCY A. TATE.''

Jesse H. Tate, one of the two sons of the testatrix, died in the month of September, 1878, leaving

one child, Jesse M. Tate, Jr., an infant son. In
the following December a bill was filed in the Chan-
cery Court of Shelby County by Bowden G. Tate,
the other son of the testatrix, against Jesse M. Tate,
Jr., to have her will construed and secure the ap-
pointment of a trustee thereunder. The Chancellor,
apparently by consent, adjudged that Jesse M. Tate,
Jr., took an undivided one-half of the devised realty
in fee on the death of his father, Jesse M. Tate.
H. L. Guion was appointed to execute the trusts of
the will, and, upon his death, E. B. LeMaster was ap-
pointed in his room and stead; and, upon the latter's
resignation, George H. Glasscock became his succes-
sor and is the present trustee. After attaining his
majority, Jesse M. Tate, Jr., in January, 1898, filed
a bill in the Probate Court of Shelby County against
Bowden G. Tate, his wife, Nannie H. Tate, and his
only child, Lucy A. Tate, a minor, to have the de-
vised real estate partitioned in kind. That relief
was granted by that Court, and thereafter Jesse M.
Tate, Jr., sold to third parties certain of the lots
assigned to him.

Subsequently, in the year 1900, Glasscock, the
trustee, filed the original and amended bills in the
present cause against Bowden G. Tate, his wife and
daughter (then seventeen years of age), Jesse M.
Tate and his wife and vendee, to vacate and annul
the decree construing the will, for the alleged reason
that it "appears to have been a consent construc-
tion," when, in reality, as alleged, Bowden G. Tate

had neither the mental nor the legal power to bind himself to such a result by such means, and the Court was without jurisdiction to make such decree, and also to vacate and annul the partition decree, because, as alleged, the trustee was not a party thereto; and further, because, as charged, the nature of the trusts of the will was such that the estate could not be partitioned during the lifetime of Bowden G. Tate, and especially not by the · Probate Court, which has only limited statutory jurisdiction. The trustee seeks additionally to obtain a construction of the will and direction as to his duties thereunder, and to this end he alleges that "he is advised that the true construction of the will gives to the defendant, Bowden G. Tate, after the death of his brother, the entire net income (of the devise), and that the trustee, when appointed, took the legal title to the real estate until the death of both the life tenants and also until the children of both life tenants attain the age of twenty-one years; and that the estate which the testatrix carved out was an equitable estate for the lives of her two sons and an equitable estate to the survivor of them, with a vested remainder" to their children, subject to be divested, upon condition that the younger of them should die before reaching the age of twenty-one years; and that it was, therefore, the duty of the trustee to divide the net income of the trust estate equally between the two sons of the testatrix so long as they both lived; and after the death of

Jesse M., to pay the whole of it to Bowden G. during his life.

Jesse M. Tate and other defendants severally demurred to these bills and assigned, substantially, the same grounds, which, briefly stated, are: (1) That the complainant has no title under the will, but is only an agent; (2) that the decree construing the will binds all interested parties; (3) that whether that decree be *res adjudicata* or not, the construction it placed on the will is the correct one; (4) that the Probate Court had plenary jurisdiction to partition the property. The demurrers being sustained and the bills dismissed, the complainant was allowed an appeal.

It is entirely clear that the testatrix intended each of her two sons to have one-half of the net income of the devised property during his life, and that he should receive this from the contemplated trustee, to whom she gave dominion and control of the property for that purpose. Though her sons are the first and principal objects of her bounty, the testatrix makes them less than legal owners, and, though the trustee is not a beneficiary at all, she makes him more than a mere agent. By the words, "The residue of my real estate I loan to my two sons . . . during their natural lives," and, "I desire a trustee appointed and the places rented out, and, after the taxes are paid, the remainder, whatever it may be, divided equally between my two sons," she devolved upon the trustee the duty of letting the

property, keeping it in repair, collecting the rents, paying the taxes, and dividing the net income equally between the two sons. The trust thus created was an active one. The legal title was conferred upon the trustee for the purpose of the trust, and only equitable life estates were vested in the sons. 1 Perry on Trusts, Sec. 307; *Jourolmon* v. *Massengill*, 86 Tenn., 82; *Jobe* v. *Dillard*, 104 Tenn., 658. See 88 Tenn., 786.

Such a trust being valid in the first instance, as this one undoubtedly was, could not, while yet alive and capable of excution, be terminated, nor the trustee, without cause, denuded of his title and powers, or any part thereof, by the decree of any court. The jurisdiction of a court of equity is always available for the conservation of a trust like this one, but never for its destruction. *Cuthbert* v. *Channet*, 18 L. R. A. (N. Y.), 745, and note; *Gerord* v. *Buckley*, 137 Mass., 475; *Outcalt* v. *Appleby*, 36 N. J. Eq., 75.

The consent of Bowden G. Tate made the decree purporting to construe the will neither better nor worse, so far at least as the title and powers of the trustee were concerned. This is true, for the twofold reason that he, as alleged, was mentally incapable of consenting, and, besides, that the trust was such that it could not be changed by the mere consent of a single beneficiary.

A trustee takes an estate exactly co-extensive with the duties to be performed by him, or just

Glasscock *v.* Tate.

such an interest as the purposes of the trust require, and that estate or interest, ordinarily, ceases only when those duties have been discharged or those purposes accomplished.    *Smith* v.' *Metcalf*, 1 Head, 64; *Smith* v. *Thompson*, 1 Swan, 385; *Roarty* v. *Smith*, 53 N. J. Ev., 257.

The proposition of the trustee is that this trust, since the death of Jesse M. Tate, as before, embraces the whole of the devised property, and that since that event Bowden G. Tate has been and is entitled to the whole of the net income during his natural life.    The adverse contention is that the death of Jesse M. Tate terminated the trust, if not entirely, at least to the extent of one undivided half of the property previously embraced, and that the fee simple title of that half, with the right of present possession, passed at once to his son, Jesse M. Tate, Jr., subject alone to the contingency of his death before becoming of age.    To the latter effect, in the main, was the consent construction now assailed for invalidity.

Both views are partially correct, neither of them entirely so.    Though the "two sons" are always mentioned collectively, and the benefaction is to them equally "during their natural lives," the testatrix, knowing that in the course of nature they would hardly die in the same month or year, evidently intended to provide for each of them separately during his own life and not for both of them jointly during their joint lives; and, as the bounty

so provided must come through the hands of the trustee alone, the trust, at least as to one-half the property, must inevitably continue to the end of the life of the longer liver. The "two sons" are not made joint tenants, but tenants in common. There is no express or implied provision for survivorship between them; no indication of a desire on the part of the testatrix that either of them should ever, in any event, have more than his original one-half of the net income of the devised realty. Hence the share or interest of Bowden G. Tate has been and is the same since the decease of his brother as it was before.

Strictly interpreted, the collective words, "at their death," would refer to the first point of time when both of the sons shall be deceased, and would make the date of the death of the longer liver the time for the whole property "to go to the heirs of their body," etc., *per capita;* but on slight indication of a contrary intention, the same words are construed distributively, and the respective remaindermen let in *per stripes* from the death of each separate life tenant. This latter construction is especially appropriate when the respective life tenants and the remaindermen sustain the relation of parent and child, as in this instance. 2 Jarman on Wills (R. & T.), 758; *Willes* v. *Douglas*, 10 Beav., 47; *Anow* v. *Mellish*, 1 De. Get. & Smale, 355; *Loving* v. *Collidge*, 99 Mass., 192.

The fact that the first gifts ever made by this will are to the children of the life tenant, in and of itself, indicates, as does also the general scheme of the devise, that the testatrix intended the devised property or its income to pass *pro tanto* and at once *per stripes* at the death of either and of each life tenant, and not *in solido* and *per capita* at the decease of the longer liver.

The words, "at the death," used in like connection, were given a contrary construction in *Loring* v. *Coolidge, supra,* but that was done, in part at least, because the beneficiaries under the will there considered did nót sustain the relation of parent and child to each other—a fact, which alone is sufficient to differentiate that case from this one. It was also ruled in that case that on the death of one of the *cestui que trust* the survivor became entitled to the whole income for life, because there was "no other party to claim an interest in the income, as income, and no apparent intent that the principal should be broken, or the trust in part terminated, until the death of both of the beneficiaries for life. 99 Mass., 193.

There is a difference between the two cases on this point also. In the first place, the general ·tenor of this will impresses the Court that the testatrix intended to limit the benefaction of each of her sons, in any and every event, to that expressly made for him; and, in the next place, the provision that the devised property shall, at the death of

the life tenants, "go to the heirs of their body, if said heirs shall live to be of age," when applied to the events actually transpiring, was evidently intended to pass one-half of the net income, after the death of Jesse M. Tate, to his son, Jesse M. Tate, Jr., until he attained his majority. Had he died before that time, the fee simple title to an undivided one-half interest in the land, with the present right of possession, would have passed, under the last clause of the will, to the trustees of Cumberland University, but, when he reached the age of twenty-one years, the contingent interest in that half became extinct and his defeasible title thereto became absolute. So long as he was a minor and his title was defeasible by his death, the trust continued as to the whole of the land, for the equal benefit of his uncle and himself, after and notwithstanding the death of his father, one of the original beneficiaries. However, when he became of age and his title to one-half of the land, thereby and in virtue of the terms of the will, became absolute, the trust was, by operation of law, cut down and terminated *pro tanto.*

There is no express direction in the will, either that the trust shall survive *in solido* or that it shall cease *pro tanto* after the death of one of the life beneficiaries; but the fact that the child of such deceased *cestui que trust* is given only a defeasible interest during minority and an absolute estate after majority, justifies the inference that the testatrix intended the trust, which must continue for her sur-

viving son, to continue, also, for the benefit of the child of her deceased son while yet a minor, and that it should terminate as to him when his title to the *corpus* became absolute. Continuation of the trust as a whole is in harmony with his interest while yet defeasible, but entirely inconsistent with the absolute ownership subsequently accruing. Similar reasoning, in part, was applied and a similar result, in part, was attained in the case of *Roarty v. Smith*, 53 N. J. Eq., 257.

After considering the different provisions of the will, in connection with and as applicable to the facts alleged, we conclude: (1) That the legal title to the devised property was vested in the trustee for the purposes of the trust; (2) that Jesse M. Tate and Bowden G. Tate the sons of the testatrix, each took a separate, non-surviving, equitable life interest to the extent of one-half the net income of the trust estate; (3) that the son, and only child, of Jesse M., and daughter, and only child, of Bowden G. each took a remainder in fee, *per stripes*, with limitation over to the trustees of Cumberland University as to each in case of death during minority; (4) that, notwithstanding the death of Jesse M. Tate., Sr., the trust continued *in solido* until Jesse M., his son, attained his majority, and then ceased *pro tanto*, he being entitled, after the death of his father and during his minority, to one-half of the net income, and, after his majority, to one-half the devised property in fee absolute; (5) that

23 p—32

the trust still continues *pro tanto* for the benefit of Bowden G. Tate, the surviving son of the testatrix, and will so continue during his life; (6) that the decree placing a consent construction on the will may be set aside because Bowden G. Tate was without capacity to approve, and the Court equally without power to adjudge, an abridgment of the trust; (7) that the partition decree is inoperative, because neither the trustee, in whom the legal title to one-half the property must remain during the life of Bowden G. Tate, nor Cumberland University, which still has a contingent interest in the same half, was before the Court.

Bowden G. Tate filed a cross bill in the present case, seeking practically the same relief as that sought in the original and amended bills, and asking, additionally, for an account with the trustee and his predecessor. Demurrers like those already stated were filed against the cross bill, and in like manner they were sustained and the complainant allowed an appeal.

For the reasons stated the decrees are reversed, the demurrers to original, amended, and cross bills overruled, and the cause remanded for further proceedings.

Decree overruling demurrer to that part of cross bill seeking an account is affirmed.