IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## MIDDLE DIVISION.

NASHVILLE, DECEMBER TERM, 1917.

Irvin Putnam. *et al. v.* John Robertson *et al.*

*(Nashville.* December Term, 1917.)

**WILLS.** Devises for widowhood. Remainders.

A devise to widow for life, or widowhood, with provision should she marry then over to the daughter, is a gift for widowhood with remainder to the daugher, on the wife dying without remarrying, as well as on her remarrying; the event of not marrying being interwoven in the original gift.

Cases cited and approved: In re Mason, 1 Chy., 695; In re Crane, 63 L. T. (N. S.), 746; Underhill v. Roden, 2 Chy., D494; Brown v. Hammond, Johns. U. C., 210; Jordan v. Holkham, Ambl., 209; Brown v. Cutter, T. Raym, 427; Maddox v. Yoe, 121 Md., 288; Aulick v. Wallace, 12 Bush, (Ky.), 531; Bates v. Webb, 8 Mass., 458; Ferson v. Dodge, 23 Pick. (Mass.), 287; Luxford v. Cheeke, 3 Leving, 125; Gordon v. Adolphus, 3 Bro. P. C., 306; Jobe v. Dillard, 104 Tenn., 658.

Cases cited and distinguished: Eaton v. Hewitt, 2 Drew & Sm. 192; Meeds v. Wood, 19 Beav., 215; Sheffield v. Lord Orrery, 3 Atk., 285.

456

Putnam v. Robertson.

FROM RUTHERFORD.

Appeal from the Chancery Court of Rutherford County.—Hon. WALTER S. BEARDEN, Chancellor.

RIDLEY & RICHARDSON, for appellants.

THOS. B. LYTLE, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

J. G. Putnam made his will in January, 1895, and died in January, 1899. He had two children born to him, a son, John W. Putnam, and a daughter, Mary Robertson. The son died before the will was written, and about seven years prior to the death of the testator. He left several children. Mrs. Robertson survived her father, and then died leaving sundry children. The testator left a widow, Kate E. Putnam, his second wife. She survived the daughter, and died in the early part of the year 1917, without having married again. The controversy in the case before us is between the heirs of the son and the heirs of the daughter, respectively, and involves the ownership of sixty-four acres of land in Rutherford county shown to be worth about $6,000. It turns on the construction of the following section of the will:

''Secondly, I give and bequeath to my wife, Kate E. Putnam, during her lifetime, or widowhood, a portion of my farm that I now reside upon, including my dwelling and all other improvements (describing the land devised) containing sixty-four acres more or less. Should my wife marry then I give to my daughter, Mary Robertson, the above-described land set apart to my said wife.''

The section concluded with a bequest to the wife of certain personal property not in controversy here.

The first section provided for the payment of debts and funeral expenses. The third (inadvertently called the fourth) devised to the daughter in fee the residue of the tract of land on which testator lived, and described such residue as that portion of the land lying south of the sixty-four acres. The next section devised to the widow, and the daughter, a tract of cedar land containing forty-two acres. The next bequeathed to the five children of the son, mentioning each by name, $100 apiece, to be held by the executor as trustee for them, and to be expended for their education. The last section nominated C. A. Robertson, the husband of the daughter, as executor.

On the 16th of September, 1896, the testator added a codicil revoking the legacy of $100 to the five children of his son, assigning as a reason that, on a careful consideration of his financial affairs, he found that after the making of his will his property had so depreciated in value there would be nothing with which to pay these legacies.

Putnam v. Robertson.

Thus nothing was given to the children of the son. Some evidence, based on conversations with the testator, was offered for the purpose of showing why the son's children were discriminated against; but this was excluded by the chancellor, and that ruling was sustained by the court of civil appeals, and no question is made thereon here. There is nothing before us therefore on this head. From the fact, however, that testator made his daughter the chief beneficiary of his bounty in the will as originally drawn and punished, and that, on the shrinking of his assets referred to in the codicil, he revoked the small provision in favor of his son's children, instead of deducting for them something from that which he had given the daughter, it is clear he considered that his duty, as between his two children, or his daughter and his grandchildren, required him to provide for his daughter. From a survey of the whole will, whatever may have been the moving cause, the inference is irresistible that he regarded his widow and his daughter as the persons entitled to his estate. It may be inferred also, from the reason given in the codicil for cutting off the children of his son, that he believed he had devised all of his estate in the dispositions made in previous parts of the will. There is no evidence showing that this belief was not justified by the facts.

With these preliminary observations, we shall now attempt a construction of the second section of the will.

Complainants contend that the sixty-four acres were incumbered only with an estate for life, vested in the widow Kate E. Putnam; that the estate in remainder to the daughter was limited only on the contingency of the widow's contracting another marriage, and that it could not take effect except upon the happening of that event; that inasmuch as the widow died without having married again, and her life estate ceased at her death and there was no limitation over to take effect in possession on her death, the testator must be regarded as having died intestate as to the estate thus freed of the incumbrance of the life estate, and the fee in the land passed under the ordinary laws of descent to his heirs at law. The defendant, children of Mrs. Robertson, contend that, under a well-known rule of construction, language like that used in the section quoted imports the raising of an estate in remainder not only on the contingency of remarriage, but also on the death of the life tenant; that the contingency of marriage is to be regarded only as a provision for cutting short the life estate, and accelerating the enjoyment of the remainder, and not as affecting the estate limited on the termination of the life of the first taker, which estate is to be regarded as an ordinary vested remainder in fee.

The question has not hitherto arisen in Tennessee, but has long been fairly settled in England in favor of defendant's contention, and also in several of our

sister States and is recognized generally in the standard text-books on wills.

In *Eaton* v. *Hewitt* (1863), 2 Drew & Sm., 192, 194, it is said:

"It is a rule now well established that where a testator gives to a woman a life interest if she so long remains unmarried, and then directs that in the event of her marriage the property shall go over to another, although according to the strict language the gift over is expressed only to take effect in the event of the marriage of the life tenant, the gift over is held to take effect even though the tenant for life does not marry."

Other statements of the rule are found in the text-books as follows:

"On the whole, then, the distinction would seem to be that, where the circumstance of not marrying again is interwoven into the original gift, the testator, having thus, in the first instance, created an estate *durante viduitate,* must generally be considered, when he subsequently refers to the marriage, to describe the determination by any means of that estate, and consequently the gift over is a vested remainder expectant thereon." 2 Jarman on Wills, 415 (Randolph & Talcott Ed., 1880).

"A devise by the testator to his widow for the term of her natural life, but, if she should marry again, then in fee to A. without any provision for the disposition of the fee after her death in case she should not marry again, is a very common form

of disposition. In such cases the court will insert the words 'when she dies,' or 'after her death,' and A. will take a vested remainder by implication upon the death of the widow without having remarried.'' 1 Underhill on Wills, 625.

''The cases state it as an established rule that where an estate is given for life, determinable upon marriage, with a gift over on marriage, the gift over takes effect upon the death as well as upon the marriage of the first taker.'' 4 British Ruling Cases, 206; an extensive note reviewing the cases, English and American.

The following English cases cited in that note may be here specially referred to as illustrating the rule: *In re Mason* (1910), 1 Chy., 695; *In re Cane* (1891), 63 L. T. (N. S.), 746; *Underhill* v. *Roden* (1876), 2 Chy., D494; *Eaton* v. *Hewitt*, supra; *Brown* v. *Hammond* (1858), Johns V. C., 210 (Eng.); *Meeds* v. *Wood* (1854), 19 Beav., 215; *Jordan* v. *Holkham* (1753), Ambl., 209; *Brown* v. *Cutter* (1683), T. Raym., 427; *Maddox* v. *Yoe* (1913), 121 Md., 288, 88 Atl., 225, Ann. Cas., 1915B, 1235. The cases of *Aulick* v. *Wallace* (1877), 12 Bush (Ky.), 531; *Bates* v. *Webb* (1812), 8 Mass., 458, and *Ferson* v. *Dodge,* 23 Pick. (Mass. 1839), 287, there cited, while not formally invoking the rule, do construe wills of a closely similar nature in a manner quite in accord with it. *Bates* v. *Webb* is a very meager case, in fact a bare decision, not a formal opinion; but *Aulick* v. *Wallace,* and *Ferson* v. *Dodge* are well reasoned.

They do not refer to the rule, but reach the same result through a course of general reasoning on the intention of the testator evidenced by the use of such or similar language, and having ascertained that intention have recourse to the rule permitting the insertion of additional words to make the meaning more clear. The will under construction in *Ferson* v. *Dodge* gave testator's wife the use of his whole estate so long as she should remain his widow, but made another provision for her if she should marry again, and further devised to his nephew all of his real estate, adding, "and I will that he come into possession of two-thirds thereof at my wife's marriage, and of the other third at her decease," and also gave the nephew half of his personal estate, of which he was to take possession at testator's wife's marriage. It was held that the nephew took all of the real property upon the death of the widow without having married again, especially where a different construction would produce a partial intestacy. And see Page on Wills, section 466.

The sentence which we have quoted supra from Jarman on Wills is immediately followed by another reading:

"On the other hand, when a testator first gives an absolute estate for life, and then ingrafts thereon a devise over to take effect on the marriage of such devisee for life, the conclusion is that the devise over is not to take effect unless the contingency happens."

The whole paragraph, composed of the two sentences, was written after an examination, by the author, of the decisions then in existence, which appear to have been to a degree in conflict, or, if not, to rest on a very narrow distinction. The second statement in the text was made to indicate the distinction.

The cases decided after the text was written seem to favor the more liberal construction noted in the first sentence quoted. At all events, a later edition of the work, that of Randolph and Talcott, vol. 2, pp. 415, 416, refers in a note to some of the English cases decided after those mentioned in the original text, and says:

"The question whether the event of not marrying is or not interwoven in the original gift may be difficult of solution. In *Meeds* v. *Wood,* 19 Beav., 215, a testator gave real estate to his executor in trust for E. for life, and directed the executor to pay her the rents every six months, 'provided that if E. should marry' then over. The Master of the Rolls admitted the distinction taken in the text, but thought the direction to the executor to pay E. the rents limited the previous gift to so long as she remained a spinster, since 'it was obvious the testator intended the rents to be paid to her herself;' and if she married she would no longer be entitled to receive them, except by the intervention of a trust for her separate use, which was inconsistent with the intention. He therefore held that the gift over took

effect on the .death of E. though she had never been married.''

It may not be amiss, as illustrating the narrow line that divides the cases on this subject, to. make the following rather extended quotation from *Meeds* v. *Wood,* supra. In that case the Master of the Rolls, Sir John Romilly, in noting the distinction used this language:

''As to the first point, with respect to the gift to John Wood and Elizabeth his wife, whether it is contingent upon the forfeiture of Ellen Knowles' previous life estate, by marriage, etc., or a vested remainder, to take effect upon the determination of that estate, the cases run into very nice distinctions, and possibly it may not be easy to reconcile every one of them. Mr. Erskine referred me to one of them, *Sheffield* v. *Lord Orrery,* 3 Atk., 285, and there are other cases to the same effect; but then there is the case of *Luxford* v. *Cheeke,* 3 Levinz, 125, which would lead to a different conclusion. I think the conclusion to be drawn from the cases is to the following effect, and the distinction between the two classes of cases may be thus stated: If an estate is given, in the first instance, absolutely for the life of any particular person, and this is clearly the extent to which the first estate is given, and then the next estate is limited so as to arise upon some contingency to arise within the lifetime of the first taker, which is thus specified, in that case the estate in remainder is a contingent one. This was the case of *Sheffield* v. *Lord*

*Orrery,* where the estate was given to the widow for her life, with a proviso that if she married again her life estate should cease, and the estate should go to the next taker. But if, by any expression in the will, you can come to the conclusion that the testator regarded the estate to be limited to last only till the happening of a particular event, this forms a part of the limitation of the original estate, and then the remainder is not a contingent but a vested remainder, which is to take effect upon the determination of the particular estate. This would have been the case in *Sheffield* v. *Lord Orrery,* if the estate had been limited to the widow as long as she remained unmarried. The case of *Luxford* v. *Cheeke* shows the distinction very strongly, for in that case the estate was given to the wife in distinct terms, and then and there was added this, 'if she should continue unmarried, but if she married again,' then over. Then, though she never married again, it was held that the following estate vested. And there are many other cases, such as *Gordon* v. *Adolphus,* 3 Bro. P. C., 306, *Jordan* v. *Holkham,* Ambler, 209, and others to the same effect. And this seems to reconcile the cases on the subject.'' 19 Bro., 215, 221, 222.

In the case we have under examination, the devise was to the wife ''during her lifetime or widowhood,'' but ''should my wife marry then'' over to the daughter. This was substantially a devise *durante viduitate,* and falls directly within *Luxford* v. *Cheeke,*

3 Lev., 125, and *Gordon* v. *Adolphus,* 3 B. P. C. Toml., 306. See, also, *Brown* v. *Cutter,* T. Raym., 427. In such cases, says Mr. Jarman, "the gifts over are vested remainders absolutely expectant on that estate, being to take effect at all events on the determination, and not conditional limitations dependent on the contingent determination of a prior estate for life." 2 Jar. (Ed. of R. & T.) p. 414. We think the event of not marrying was, in the will before us, interwoven in the original gift. This results from the fact that the estate to the wife was to last only during widowhood. That widowhood, reasonably, might be regarded by the testator, when he made the will, as eventuating possibly in a period of time commensurate with her life, or as falling short of that time by a marriage prior to her death, in which latter event the estate of the wife would cease. So it is apparent that the devise was to the wife in effect, so long as she should remain testator's widow. Therefore the case does not fall within *Sheffield* v. *Lord Orrery,* 3 Atk., 282, but within the other cases cited supra.

In the case we have in hand, it has been seen the testator understood himself as having disposed of all of his estate, and that a construction of the will divergent from the general rule already stated would run counter to that understanding and thus defeat his intention. But aside from this special aspect of the will, we are of opinion that the general rule should be followed. It is true that, in some sense,

every will is a law to itself, that the court is not bound to follow any rule of construction merely because used in other cases, especially one not hitherto adopted in our State, and furthermore that we have no power or authority to make a will for any man, or to insert words that would in any wise tend to thwart the intention otherwise manifest from the language used; yet where such language, when taken literally, from its meagerness leaves the mind in doubt as to the meaning intended, and must on a strict construction result in a partial intestacy, in the face of the well recognized presumption against intestacy, and the dilemma thus produced has been generally met and overcome by intelligent and high-minded courts through the application of a special rule of construction, when called upon to construe language practically identical, and the apparent soundness of the rule is not denied, there is the greatest probability that a just result may be reached in all similar cases by the aid of the rule. There is, too, a wide difference between supplying words to make a will contrary to the testator's intention, and inferring from the words actually used by him that a particular thought or shade of thought was in his mind when he employed those words but which they did not adequately or fully express, and setting forth that shadowed meaning, by construction, through the agency of other words that truly develop the intention. The court will not hesitate to supply omitted words to effectuate the intention. *Jobe* v. *Dillard,* 104 Tenn.,

658, 661, 58 S. W., 324; Page on Wills, section 473, note 99. Whether the words employed by the testator in the will before us are capable of conveying the meaning ascribed is a matter of opinion. That they have been generally so construed by able courts is very high evidence that such construction is the correct one. Nor is there any inherent improbability. Why should a testator purposely create an estate for life or widowhood in favor of A. with remainder in fee to B. in case A. should marry, and leave unsettled the course of the estate in case the latter should die without having married? There is manifestly an infirmity, an imperfectly expressed intent on the face of such a devise, a want of logical completeness. It is the duty of the court to ascertain what was in the mind of the testator, and to draw it forth from the will. The fact that an interest for life or widowhood is carved out at once suggests the question whether the residue of the estate in the land is to revert to the testator's heirs as undevised property, or to go over by way of remainder to another, or others designated. When it is perceived that a remainder was in fact created and the beneficiary thereof named, but on further inspection discovered that the only event specified upon the happening of which the remainder was to become effective was the marriage of the life tenant, the most reasonable conclusion seems to be that marriage (the condition of non-marriage being interwoven with the original gift) was indicated simply as an event the happening of which

would hasten the falling in or cessation of the estate, which would otherwise persist during life, leaving unaffected the cardinal fact that there was created a life estate and a remainder; the latter of which turns on the cessation of the former, and the further fact that such former estate usually terminates only at death, an earlier termination by some means set forth in the instrument of settlement being a not very frequent exception. So that it seems such language as occurs in the passage which we have quoted from the second section of the will should be construed as if it had read to Kate E. Putnam for life, and remainder in fee to Mary Robertson, but on marriage of the former her life estate shall cease. The life estate not having been shortened by marriage, but having proceeded to its natural termination, the remainder, which was vested on the taking effect of the will, became consummated in possession, or the lawful right of possession, on the termination of the prior estate, by death.

The court of civil appeals so held, and its judgment is affirmed, with costs.