Armstrong *v.* Douglass.

89  219
d110 635

ARMSTRONG *v.* DOUGLASS.


(*Knoxville.*    October 2, 1890.)


1. WILL.  *Devise that is not void for remoteness.*

Testator made devises to each of his two sons individually, and another to them jointly as trustees, and then provided as follows:

"*Fourteenth.*—Finally, should either of my sons die, leaving no legal descendants, then, and in that event, all the property that should have been his if living shall go to and become the property of the survivor and his legal descendants, and the property of the survivor of the trustees mentioned, for the uses and trusts of the wards, George and Amelia, subject to all the restrictions and limitations contained in that portion of that instrument creating such trusts."

*Held:* This devise is not void for remoteness. The contingency provided for is the death of one son, "leaving no legal descendants," *while the other son still lives.*

Cases cited and approved: Booker *v.* Booker, 5 Hum., 505; Brown *v.* Brown, 86 Tenn., 277; Bramlett *v.* Bates, 1 Sneed, 555.


2. SAME.  *Devise that is void for remoteness.*

But the next succeeding clause of said will is void for remoteness. It is in these words:

"*Fifteenth.*—In conclusion, I declare it to be my fixed purpose and intention that the legal or equitable right of no portion of my estate herein bequeathed shall pass out of my legal descendants, or the legal descendants of my children, to strangers in blood; but, for want of legal descendants from any branch of my family, shall return to and remain the property of the survivors of my family."

*Held:* This devise is void for remoteness. The intention is "expressly and plainly declared" in this clause to lock up his estate in his descendants to the remotest generations.

Cases cited: Lewis *v.* Claiborne, 5 Yer., 371; Booker *v.* Booker, 5 Hum., 505; Bramlett *v.* Bates, 1 Sneed, 555.

3. SAME. *Construction of distinct and independent clauses.*

The two clauses, being distinct and independent in their provisions, the invalidity of the fifteenth does not affect the fourteenth clause.

Case cited and approved: Randolph *v.* Wendel, 4 Sneed, 670.

4. SAME. *Code, ₰ 2815 (M. & V.), construed.*

In all cases where it is perfectly clear upon the face of the will that devises over are either void or not void for remoteness, there is no room for the application of the statute, which provides:

"Every contingent limitation in any deed or will made to depend upon the dying of any person without heir or heirs of the body, or without issue of the body, or without children or offspring or descendants or other relative, shall be a limitation to take effect when such person dies without heir, issue, child, offspring, or descendants or other relative, as the case may be, living at the time of his death, or born to him within ten months thereafter, unless the intention of such limitation be otherwise expressly and plainly declared in the face of the deed or will creating it."

Code construed: ₰ 2815 (M. & V.); ₰ 2009 (T. & S.).

---

FROM KNOX.

---

Appeal from Chancery Court of Knox County. H. R. GIBSON, Ch.

WEBB & McCLUNG for Armstrong.

L. A. LINDSAY for Douglass.

CALDWELL, J. This is a bill for the construction of a will, and to remove clouds from title to land.

Drury P. Armstrong died testate in September, 1856, and his will was probated in October following. He left surviving two sons and two children of a deceased daughter, all of whom were favored objects of his bounty.

By the second clause of his will he gave certain real estate to his son, Robert H., by the third clause he gave certain other real estate to his other son, Marcellus M., and by the fourth clause he gave still other real estate to his two sons, as trustees for his two grandchildren, George A. and Amelia C. Hill, children of his deceased daughter, Adelia A.

The fourteenth and fifteenth clauses contain certain limitations upon the devises of the second, third, and fourth clauses. In May, 1890, Marcellus M. Armstrong filed the bill in this cause impeaching those limitations as void for remoteness, and seeking to have them removed as clouds from his title.

The two clauses so impeached are as follows.:

"*Fourteenth.*—Finally, should either of my sons die, leaving no legal descendants, then, and in that event, all the property that should have been his if living, shall go to and become the property of the survivor and his legal descendants, and the property of the survivor of the trustees mentioned, for the uses and trusts of the wards, George and Amelia, subject to all the restrictions and limitations contained in that portion of this instrument creating such trusts.

"*Fifteenth.*—In conclusion, I declare it to be my fixed purpose and intention that the legal or equitable right of no portion of my estate herein bequeathed shall pass out of my legal descendants, or the legal descendants of my children, to strangers in blood; but, for the want of legal descendants from any branch of my family, shall return to and remain the property of the survivors of my family."

The law favors free alienation of property and abhors perpetuities. All limitations over which depend on an indefinite failure of issue, a total extinction of descendants of the first taker, are deemed too remote and void, as tending to create perpetuities; while, on the other hand, those depending on a definite failure of issue, or a contingency which must happen, if at all, within the period of a life or lives in being, twenty-one years and ten months, are good executory devises, and will be upheld by the Courts. 4 Kent, 295 and 317; 1 Jar. on Wills (by R. & T.), 518; 2 Red. on Wills (Ed. of 1866), 845; 1 Wash. on R. P., p. 97, Sec. 57; *Booker* v. *Booker*, 5 Hum., 505; *Brown* v. *Brown*, 2 Pickle, 277.

After making specific devises to each of his two sons individually, and to them jointly as trustees for his two grandchildren, the testator in this case used the language of the fourteenth and fifteenth clauses, which we have quoted at large.

The former of these clauses relates alone to the death of either of those sons without legal

descendants while the other one is yet alive, and, in that event, to the further disposition of the property already devised to the son so dying. It has no reference to the death of the other son or of the grandchildren, and makes no disposition of the property previously devised to them; but it creates contingent limitations over in their favor, and in that way increases the amount of their estates.

The fifteenth clause is more comprehensive, and may embrace in its scope all the property devised —that which the surviving son and the grandchildren received under the will in the first instance, as well as that which they might receive from the deceased son under the fourteenth clause, or all of it as originally devised in case the contingency contemplated in the fourteenth clause should not happen.

There is no necessary connection between the provisions of the two clauses. Therefore, they will be considered and construed separately.

The fourteenth clause, when summarized, is but a direction that in case either of the testator's two sons should "die leaving no legal descendants," the property that would belong to that son "if living," shall pass to the surviving son in his own right, and as trustee for the two grandchildren.

Through the zeal of the Courts to prevent perpetuities, the words "die leaving no legal descendants," and other like phrases, were long ago given a uniform and technical meaning, whereby they were held to import an indefinite failure of

issue, and all limitations over depending on them were declared inoperative and void. But finally, to avoid an equally hurtful extreme, it became the practice of the Courts to explore the whole will and lay hold of some other expression or circumstance, if necessary to defeat the arbitrary meaning of such words and thereby give force and effect to the manifestly lawful intention of the testator. Such is the rule of construction to-day, where the common law on this subject is enforced. 4 Kent, * 277–279; *Bramlet* v. *Bates*, 1 Sneed, 555; 1 Jar. on Wills (by R. & T.), 519, note '15.

Applying that rule here, and looking to the whole of the fourteenth clause, it becomes certain that the testator did not use the words, "die leaving no legal descendants," in their technical sense.

Providing for the death of either of his sons without legal descendants, he made an executory devise of "the property that should have been *his if living*," meaning thereby the property that should belong to the deceased son under a previous devise of the will at the time of his death, and not the property that might belong to the longest liver of the deceased son's descendants, when such person should die and the line become extinct. This shows it to have been the intention of the testator that the property in question was to be ascertained and the limitation over to take effect at the death of the son, the first taker. Moreover,

the executory devise is in favor of "the survivor" of the two sons and "the survivor of the trustees mentioned" in the fourth clause. The two sons were living when the will was made and when it went into effect. Both of them were made trustees by the testator for his grandchildren. When he says, "should either of my sons die leaving no legal descendants, * * * the survivor," etc., he refers to one of them as dying and the other as still living. When he says "the survivor of the trustees mentioned" he means that one of his two trustees (the brothers), who shall outlive the other one.

It is the survivor of the testator's two sons and the survivor of the trustees mentioned (they being one and the same person), and not the survivor of an after generation, who is to receive for himself and as trustee the property of the other son dying without legal descendants.

One son and trustee could not possibly be the survivor of the other son and trustee, and take property from him, unless living himself at the time. Hence the limitation over must take effect in the life-time of a person living when the will was executed.

Then, it results from a construction of the whole of the fourteenth clause of the will before us, that the contingency therein provided for must of necessity come to pass, if at all, at the death of one of the testator's sons and in the life-time of the other one, and that the limitation over constitutes a good executory devise.

15—5 p

Whatever the language may be, if the limitation over must, by the terms of the will, take effect within the lawful period, it is valid. 7 Term R., 102; 13 Wend., 440; 1 Jar. on Wills (by R. & T.), 548; 2 Red. on Wills (Ed. 1866), p. 850, Sec. 19; 2 Pickle, 277.

Not only are the words, "die leaving no legal descendants," rescued from their technical meaning by the context, but the same result is accomplished by the Act of 1852, which is as follows:

"Every contingent limitation in any deed or will, made to depend upon the dying of any person without heir or heirs of the body, or without issue of the body, or without children or offspring or descendants or other relative, shall be a limitation to take effect when such person dies without heir, issue, child, offspring, or descendants, or other relative, as the case may be, living at the time of his death or born to him within ten months thereafter, unless the intention of such limitation be otherwise expressly and plainly declared in the face of the deed or will creating it." Code (M. & V.), § 2815.

By the terms of this statute the contingent limitation of the fourteenth clause of this will must take effect when either of the testator's sons shall die leaving no legal descendants, "living at the time of his death or born to him within ten months thereafter;" a contrary intention not being "expressly and plainly declared in the face of the will creating it." So that by the statutory con-

struction, and by a natural interpretation of the whole clause, by the statute and without it, the technical words of the clause are qualified in such a manner as to preserve the executory devise and effectuate the manifest intention of the testator.

It is not to be inferred, however, from this reference to the harmony of the statutory construction with that clearly demanded by the context, that the statute is applicable only where there may be such concurrence.  On the contrary, the statute applies to, and the legislative construction controls, the contingent limitation in every case, "unless the intention of such limitation be otherwise expressly and plainly declared in the face of the deed or will creating it."  If it be clear that the testator, in a given case, intended the limitation to take effect within the lawful period, then the statute is not needed; if his intention is doubtful, the statute must be applied and the limitation upheld.  It is only where the testator expressly and plainly declares his purpose to create a perpetuity that the contingent limitation will not be saved by the statute.  The provision of the statute is the equivalent of a conclusive presumption that the maker of the deed or will intended the limitation to take effect within the lawful period, unless the contrary is expressly and plainly declared.

Nevertheless, since the statute, as before, perpetuities are unlawful.

With the provision of the statute in view, we

come next to the consideration of the fifteenth clause, whose limitations, if preserved at all, must be preserved by the statute. By this clause the testator declares it to be his fixed purpose and intention that no part of the estate devised shall pass out of his legal descendants, or the legal descendants of his children, to strangers in blood, but that, for want of legal descendants from any branch of his family, the property of such branch shall return to and remain the property of the survivors of his family.

.The vigorous language here used places this clause within the exception of the statute, and leaves its validity to be determined by other rules. No doubt is left that the testator intended to lock up his estate in his descendants and the descendants of his children through the remotest generations, and that as one branch of his family become extinct others shall come into the enjoyment of its share of his estate, the process going on *ad infinitum.*

He expressly and plainly declares such to be his "fixed purpose and intention"—not exactly in the words we have used, but in language of the same import.

The word "survivors," as used in the conclusion of this clause, does not stand in the way of this construction, or indicate a different intention on the part of the testator from that we have attributed to him.

It is true *survivor* is a restrictive word, and

that its employment, in connection with such phrases as "dying without issue," or "without legal descendants," has been held to qualify their technical meaning, and authorize them to be read as dying without issue, or without legal descendants, *at the time. of the first taker's death.* Cutter v. *Doughty,* 23 Wend., 513; *Lewis* v. *Claiborne,* 5 Yer., 371; 5 Hum., 505; 1 Sneed, 555; 4 Kent, *278, 279.

But such effect can properly be given the word only when it is intended to designate one of a number of persons named in a will (as in the fourteenth clause of the will before us), or one of a class not so specifically named, but referred to as then in existence, or contemplated as coming into existence before and continuing in life at the time of the death of the first taker.

Certainly it can produce no such result when, as here, it is manifestly intended to designate the longest livers of three several lines of descendants who may represent the testator's family in the remotest generations.

The conclusion is that the contingent limitations of the fifteenth clause are void for remoteness, and that the first takers hold the property devised to them in other parts of the will, entirely discharged from such limitations and as if they had never been imposed. 2 Wash. on R. P., 703.

It cannot be that the falling of those limitations will pull down with them the limitations of the fourteenth clause; for, as already seen, there

---

---

is no necessary connection between the two clauses. They contain separate and distinct limitations, without referring the one to the other. Therefore, by the soundest rule of construction, each must stand upon its own terms, and be interpreted separately. *Randolph* v. *Wendel*, 4 Sneed, 670.

The decree of the Chancellor adjudging both fourteenth and fifteenth clauses valid, is affirmed as to the former and reversed as to the latter.

Since the defense is by minors who have no fund in Court, and the bill is for the benefit of complainant, he will pay all costs.