THELMA MOSER ROSS et al. v. NANCY ROSS
STIFF et al. —338 S. W. (2d) 244.

Middle Section at Nashville. March 4, 1960.

Certiorari Denied by Supreme Court September 9, 1960.

James C. Havron, Nashville, for complainants.

Lowe Watkins, E. J. Walsh (Byron V. Bean, Hugh C. Howser, Richard Marshall, Ernest C. Matthews, III, Guardians ad Litem), Nashville, for defendants.

HUMPHREYS, J. Dr. S. T. Ross, a physician, died testate in Davidson County on July 23, 1956. His immediate family consisted of his widow, Mrs. Thelma Moser Ross, their two daughters, Mrs. Thelma Ross Frazier and Mrs. Nancy Ross Stiff, and numerous grandchildren. He was also survived by two brothers, Dr. John Ross of New York City, and Mr. Lanty M. Ross of Maryville, Tennessee, and their descendants. His widow, two daughters, and his brother Lanty M. Ross, were named as executors and trustees of his will. The estate consists principally of real estate and corporation stocks, and is quite substantial, amounting in gross to between $400,000 and $500,000.

This suit originated in the Chancery Court at Nashville by a bill filed by three of the executors against the fourth executor and other defendants, praying for an interpretation of the will and for instructions. All defendants to the bill filed answers or suffered pro confesso, and minor defendants and unborn defendants were represented by guardian or guardian ad litem. The Chancellor entered a decree construing the will from which three guardians ad litem have separately appealed, and the case is here on their assignments of error. The other

parties were satisfied with the decree, and have defended it in this Court by brief and argument.

The pertinent provisions of the will, those which must be dealt with under the assignments of error here for our consideration, are as follow:

"*Item VIII:*

"The said management is to pay into the hands of my said wife, Thelma Moser Ross, thirty per cent of the net income from the estate. Thirty per cent is to be paid into the hands of my daughter, Thelma Ross Frazier, and twenty per cent is to be paid into the hands of my daughter, Nancy Ross Stiff. Ten per cent is to be paid into the hands of my said wife, Thelma Moser Ross, for Linda Louise Stiff, whom Mrs. Thelma Moser Ross has devoted a great deal of time and effort in helping rear from birth and for whom Mrs. Ross and I feel, to some extent, responsible for her care and welfare. This is to be turned over to my wife, Mrs. Thelma Moser Ross, to spend as she sees fit for the care of Linda Louise Stiff. Another ten per cent is to be retained as an educational fund for any and all of my grandchildren as needed from time to time.

"This difference of distribution of these funds is due to the fact that my daughter, Nancy Ross Stiff, has received more than an equal share of the estate and that I am now obligated on several thousand dollars of notes and debts for her. For this said income paid to my two daughters, Thelma Ross Frazier and Nancy Ross Stiff, they are to devote what time and attention is necessary to their mother and to see that she is well cared for in sickness and in health.

This income is to be paid monthly to my wife and children to use as they desire and the management is to have no further control over such funds. Any residue at the close of the year may be carried over to the following year or divided between my wife and daughters on the same basis as above.

"*Item X:*

"If at any time the income from the estate proves in the opinion of the managers, insufficient for the purpose hereinabove mentioned, they may encroach annually, if necessary, upon the corpus of the estate without the necessity of any Court proceedings, for an amount and to the extent of Twelve Hundred ($1200.00) Dollars for my said wife, Thelma Moser Ross, and Twelve Hundred ($1200.00) Dollars for each of my said children, Thelma Ross Frazier and Nancy Ross Stiff, and any other child or children born to me and my said wife, Thelma Moser Ross, then living, annually.

"*ITEM XI:*

"Upon the death of my said wife, Thelma Moser Ross, should she survive me, all the uses, terms and conditions, herein provided, shall continue in full force and effect and the income paid to my said wife, Thelma Moser Ross, shall then be paid to my said children, Thelma Ross Frazier and Nancy Ross Stiff, or any other child or children born to my said wife, Thelma Moser Ross, and myself. In the event of my death and that of my said wife, Thelma Moser Ross, I wish to make the following changes in the disposition of the net income as follows: The said manage-

ment is to pay into the hands of my said daughter, Thelma Ross Frazier, forty-five percent of the net income from the estate. Thirty per cent is to be paid into the hands of my said daughter, Nancy Ross Stiff. Fifteen per cent is to be used for Linda Louise Stiff by her mother, Nancy Ross Stiff, until she reaches the age of twenty-one and at which time, Linda Louise Stiff will be paid her fifteen per cent to be used by herself, with the guidance of her mother. Ten per cent is to be used for an educational fund, this is to be used as needed by all my grandchildren.

### "ITEM XIII:

"It is my desire that my estate be kept intact until the death of my widow, Thelma Moser Ross, and as long as my grandchildren, namely the children of Thelma Ross Frazier and Nancy Ross Stiff, and any other child or children born to my said wife, Thelma Moser Ross, and myself shall live.

### "ITEM XIV:

"If upon the death of my said wife, Thelma Moser Ross, and at the death of the last living grandchild and none of my children or grandchildren or their issue be then living, then I bequeath and devise all my said property absolutely and equally to my said two brothers, Dr. John Ross and Lanty M. Ross, and if they not be living the corpus of the estate shall be divided among their children.

"It is my desire that Kate S. Cowan, if she is in my employ at the time of my death, be kept on at her full salary for at least four months."

The decree of the Chancellor was rendered without written opinion. With respect to the division of income during the widow's life, the decree provides:

"The trust established and created by testator's will, and consisting of the property above referred to is valid for the life of testator's widow, Thelma Moser Ross. During the continuation of the trust the 'Executor and Executrixes', sometimes referred to as 'Managers' and 'Management', will distribute the net income received from said trust property in accordance with provisions of paragraph VIII, to wit:

To Thelma Moser Ross_____30%
To Thelma Ross Frazier, or her estate_____30%
To Nancy Ross Stiff, or her estate_____20%
To Thelma Moser Ross, for the use of
 Linda Louise Stiff, or her estate_____ _10%

and they will retain the remaining 10% of said net income and use it according to their best judgment for the education of the grandchildren of testator, including those born after his death."

With respect to the duration of the trust and its termination and vesting the Chancellor found:

"The trust property described and referred to in paragraphs V and VI of testator's will, upon his death, vested in his two daughters Thelma Ross Frazier and Nancy Ross Stiff, and his granddaughter, Linda Louise Stiff, in the proportions hereinafter set forth, subject to unpaid debts, taxes, costs of administration, the costs of this proceeding, including counsel and guardian ad litem fees, and also subject

to the provisions of the trust established for the benefit of his widow, Thelma Moser Ross, and his two daughters and his granddaughter, above named, and the Educational Fund provided for, including all of the powers given the 'Executor and Executrixes' to deal with the trust property during the continuation of the trust.

"The trust created by the Will of testator will terminate upon the death of testator's widow, Thelma Moser Ross. There is no valid limitation as to the time beneficiaries shall enjoy the respective percentages of income at the death of the widow, and there is no express disposition made of said income beyond said beneficiaries. Hence a devise of income without any limitation carries the fee. Therefore the property then constituting the trust estate, together with any undistributed income, will vest in possession and enjoyment in testator's daughters and said granddaughter to the same extent and proportions as the gifts of income made to them by paragraph XI of the Will, to wit:

To Thelma Ross Frazier, or her estate_____45%
To Nancy Ross Stiff, or her estate_____30%
To Linda Louise Stiff, or her estate_____15%

"The Educational Fund provided for in paragraphs VIII and XI of the Will is for the benefit of testator's grandchildren only and therefore it is not a charitable trust. It also terminates at the death of testator's widow. There is no valid gift over of said ten per cent of the net income of the trust estate and the Will does not have a residuary clause; therefore the testator died intestate as to said re-

maining ten per cent of the trust estate and it and the unused income in the hands of the 'Managers' at the death of testator's widow, will vest in possession and enjoyment equally in testator's daughters or their estates.''

In summary, the Chancellor held that the trust will continue until the widow's death with the income therefrom to be divided among the named beneficiaries or their estates; that upon the testator's death the estate vested in his two daughters and granddaughter, Linda Louise Stiff, subject to (1) the obligations of the estate, (2) the trust for the widow, the two daughters and the named granddaughter, and, (3) the educational fund provisions. That upon the widow's death, there being no valid limitation as to the time the named beneficiaries would enjoy the income, and no express disposition of income beyond the named beneficiaries, the estate would then vest in possession and enjoyment in the daughters or named granddaughter or their estates in the percentages fixed in Item XI of the will. That as to the ten per cent for the educational fund, it passes as intestate property upon the death of the widow to the two daughters or their estates, the trust with respect thereto being void, thereafter.

While the guardians ad litem differ with each other as to what the Chancellor should have held, their assignments of error all complain with respect to (1) the duration of the trust, (2) the disposition of income, and (3) the vesting of the legal title. The guardian ad litem for the after-born children contends that they should be treated as being in existence at testator's death and that the trust should continue until the death of all of testator's grandchildren, including those born after his death,

with the income being divided per stirpes, with the remainder to the heirs of the grandchildren and, if none, then the legal title to vest in testator's two brothers or their children under Item XIV of the will. The guardian ad litem for the testator's grandchildren living at his death would treat the trust as continuing during the lifetime of such grandchildren, with a life estate of such grandchildren after the death of testator's wife and two children, after which life estate the fee would vest in the issue of such grandchildren if any, otherwise, to testator's two brothers or their children. Under this contention grandchildren born after testator's death would be cut off. The guardian ad litem acting on behalf of all grandchildren of the testator, including those born after his death, would treat the will as creating an equitable life estate in all of the grandchildren of the testator after the death of the testator's wife and two children, with title vesting finally in the issue of all of the grandchildren of testator, and if none, then in testator's two brothers or their children.

All of these assignments of error will be met if we will but construe the will and apply to that construction such rules of law as may be applicable thereto. This we proceed to do.

█ With respect to the duration of the trust, as we divine the testator's intent from his rather incomplete and imperfect effort to set it down, it is that the trust estate is to continue for the lifetime of his widow and two children, thereafter for the lifetime of all his grandchildren, and upon the death of the last grandchild, to vest in the issue of such grandchildren, and, if none, then to vest in testator's two brothers, Dr. John Ross and Lanty Ross or their children. There is no express dis-

position of the income of these grandchildren after the death of the widow and the two daughters. The will is silent as to whether grandchildren are to be paid any of the income upon the death of their parents, or upon the death of the granddaughter Linda Louise Stiff, without issue. Nor, is any disposition made of the 15 per cent payable to the granddaughter in the event of her death, with or without issue. We are left to conjecture whether the interest of a daughter or the grandchild is to be paid to the other named beneficiaries upon death, as in the case of the death of the widow, or is to be distributed per stirpes to that person's issue, or to be paid per capita to all of the then living grandchildren, or to be accumulated. Likewise, we are left without instructions whether the interest of a grandchild is to be paid to his issue upon his death or to be distributed among the other grandchildren until such time as the last grandchild shall die, or be accumulated. And, with respect to the manner in which the trust estate shall be distributed to the issue of the grandchildren upon the death of the last surviving grandchild the will is likewise silent.

Although much was left unsaid in testator's will that should have been said, it is clear that in speaking of his grandchildren, he did not refer only to those living at the time of his death. This is proved by Sections XIII and XIV of his will. Section XIV plainly defers the final vesting until "the death of my last living grandchild." If testator had had in mind his grandchildren living at his death he would have said so here. Moreover, there are no words which qualify his direction in Section XIII that his "estate be kept intact * * * as long as my grandchildren, namely the children of Thelma Ross Frazier and Nancy Ross Stiff, and any other child or

children born to my said wife, Thelma Moser Ross, and myself shall live.'' If testator had been aware that he was treading upon dangerous ground in undertaking to limit the vesting of his estate to the children of grandchildren, which danger as we see it would have been the only reason for him to single out his living grandchildren, he would have said something about this in this fourteenth section of the will where he limited the remainder to vest at the death of his last living grandchild. It would appear that the testator, who prepared his own will, was unaware of the rule against perpetuities and instead of skirting around the rule by limiting the trust to the lifetime of grandchildren in being at his death, or by making a per stirpes limitation to his grandchildren, he limited the trust to endure for the lifetime of his longest living grandchild, regardless of when that grandchild was born.

■ Having ascertained the intention of the testator with respect to the duration of the trust and its vesting, the next question that arises is whether the trust violates the rule against perpetuities. This rule has been stated as follows:

"Executory limitations in wills, whether of real or personal estate, in order to be valid, must vest in interest if at all within a life or lives in being and 21 years and a fraction thereafter for the term of gestation in cases of posthumous birth.'' Eager v. McCoy, 143 Tenn. 693, 702, 228 S. W. 709.

As stated by Professor Gray, the rule against perpetuities is:

"No interest is good unless it must vest, if at all, not later than twenty-one years after some life in

being at the creation of the interest.'' Gray: The Rule Against Perpetuities, sec. 201.

''As stated by another authority:

''Stated affirmatively, the rule against perpetuities allows the postponement of the vesting of an estate or interest for the period of lives in being and twenty-one years and the period of gestation.'' 41 Am. Jur. Perpetuities, sec. 3.

''The rule governs both legal and equitable interests in realty and personalty.'' Gray: The Rule Against Perpetuities, sec. 202.

█ The rule against perpetuities being as stated, we think the limitation over to all grandchildren for life with remainder to their issue, after limitation to lives in being at the testator's death for life, without any directions as to whether the interests thus limited are to be distributed per capita or per stirpes is void. It is clear there is no vesting of the remainder interest until after the lifetime of two children and one grandchild of the testator living at the time of the testator's death and after the lifetime of grandchildren of the testator who may not have been born until after his death. Thus, the vesting can be postponed for two lifetimes, only one of which may have been in being at the death of the testator. This, of course, defies the rule, and the provision is void.

The counterpart of this trust is referred to in leading authorities as an example of a trust which violates the rule against perpetuities. One leading authority contains the following statement:

''A devise of a future interest to take effect on the death of the children of a living person violates

the rule against perpetuities, since it is possible that such living person may survive the testator and may subsequently have children not in being at the time of his death and that such unborn children may live more than twenty-one years. * * * A common instance falling within this class of cases is that of a devise over on the death of the testator's grandchildren. Such grandchildren may be born after the testator's death and may live for more than twenty-one years." 41 Am. Jur. Perpetuities, sec. 54.

In another authority the rule with respect to limitations to grandchildren or great-grandchildren is stated thus:

"In view of the possibility of great-grandchildren being born after the termination of lives in being and the expiration of twenty-one years thereafter, a gift over, after the death of all the testator's children and grandchildren, violates the rule against perpetuities, where the lives in being at the testator's death are those of his widow and children." 70 C.J.S. Perpetuities, sec. 14.

█ As to the effect of a distribution per stirpes, see Lovering v. Lovering, 129 Mass. 97. See also Sands v. Fly, Tenn., 292 S. W. (2d) 706, 713. Hassell v. Sims, 176 Tenn. 318, 141 S. W. (2d) 472 must be considered as authority against the limitations under consideration although it involved a limitation in a deed and on that account all that is said therein is not applicable here. That case does hold in effect that the limitation of an estate to a living person's unborn grandchildren is void for remoteness, unless restricted to those living at a time not later than the expiration of the period specified by

the rule against perpetuities, after the creation of such limitation. Also see Russell v. Jackson, 21 Tenn. App. 512, 113 S. W. (2d) 76.

Since we hold that sec. 13 and sec. 14 of the will are void for remoteness, there remains then but a consideration of the consequences of this action. As indicated in Armstrong v. Douglass, 89 Tenn. 219, 14 S. W. 604, 10 L. R. A. 85, the primary testamentary intent of a testator will not necessarily be pulled down by the invalidation of one or more of the provisions by which that general intent is manifested. This will only result when it appears that the invalid limitation is such an essential part of the general scheme of the will that the several parts of the devise are inseparable and the whole must be adjudged void. In Gray: The Rule Against Perpetuities, sec. 247, it is stated:

*"Void Limitations omitted.* If future interests created by any instrument are avoided by the Rule against Perpetuities, the prior interests become what they would have been had the limitation of the future estates been omitted from the instrument. Thus, if an estate is given to A. for life, remainder to his children and to their heirs, but, if the children all die under twenty-five, then to B. and his heirs, the limitation to B. is too remote, and the children of A. take an indefeasible fee simple. The cases illustrating this are innumerable. So when there is a devise on a remote condition, and no prior devise, the land descends to the heir who has an indefeasible fee."

Armstrong v. Douglass, supra, indicates this is the rule in Tennessee. We quote:

"The conclusion is that the contingent limitations of the fifteenth clause are void for remoteness, and that the first takers hold the property devised to them in other parts of the will, entirely discharged from such limitations and as if they had never been imposed. 2 Washb. Real. Prop. 703.

"It cannot be that the falling of those limitations will push down with them the limitations of the fourteenth clause; for, as already seen, there is no necessary connection between the two clauses. They contain separate and distinct limitations, without referring the one to the other. Therefore, by the soundest rule of construction, each must stand upon its own terms, and be interpreted separately. Randolph v. Wendel, 41 Sneed, 670." Armstrong v. Douglass, 89 Tenn. 229-230, 14 S. W. 604, 606.

■ Applied to the case at bar, the result is, the limitation in favor of the wife and two daughters and granddaughter will stand while the limitation to grandchildren and to their issue must fail. Under Armstrong v. Douglass, supra, we must construe the testator's will, and his intention in regard to his estate, as though sec. 13 and sec. 14 had not been written therein.

What, then is the proper construction of the remaining part of the will, particularly sec. 8 and sec. 9, vesting the interests therein set up in the widow, the two daughters, and granddaughter, without any limitation over, either express or implied, except to the two daughters and the granddaughter on the death of the widow.

The Chancellor found that there was no valid limitation as to the time the named beneficiaries should enjoy the respective percentages of income at the death of the

widow. That there was no express disposition made of this income beyond the named beneficiaries, so this was a devise of the income without any limitation, which carried the fee. That the property constituting the trust estate, at the time of the death of Mrs. Thelma Moser Ross, would ''vest in possession and enjoyment in testator's daughters and said granddaughter to the same extent and proportion as the gifts of the income as made in sec. XI of the will, to-wit: To Thelma Ross Frazier, or her estate, 45%, to Nancy Ross Stiff or her estate, 30%; to Linda Louise Stiff or her estate, 15%.

██ ██ We hold the Chancellor's construction in this regard is correct. It is the rule that a gift of income without limitation carries the fee. Davis v. Williams, 85 Tenn. 646, 4 S. W. 8; Trammell v. Trammell, 162 Tenn. 1, 19-20, 32 S. W. (2d) 1025, 35 S. W. (2d) 574; Davis v. Mitchell, 27 Tenn. App. 182, 224, 178 S. W. (2d) 889.

 It is insisted we should imply time limitations and imply disposition of income. However, the law is opposed to such implication where the will is silent and where it would be necessary to indulge in speculation regarding the testator's intent as to the identity and shares of beneficiaries. The rule is, that gifts by implication are not favored, and cannot rest upon conjecture. Porter v. Union Trust Co., 182 Ind. 637, 108 N. E. 117; Connor v. Gardner, 230 Ill. 258, 82 N. E. 640, 15 L. R. A., N. S., 73. See also Annotation 15 L. R. A., N. S., 74; Also L. R. A. 1917A, p. 1214. A gift will not be inferred from mere silence, but must be founded on expressions in the will, and is only admitted as a means of carrying out what the testator appears on the whole to have really meant, but failed somehow to express as distinctly as he should have done. Calloway v. Calloway,

171 Ky. 366, 188 S. W. 410, L. R. A. 1917A, 1210; O'Hearn v. O'Hearn, 114 Wis. 428, 90 N. W. 450, 58 L. R. A. 105. It has been said that the probability of an intention to make the implied gift must be so strong that an intention contrary to that which is imputed to the testator cannot be supposed to have existed in his mind.

Trustees Presbyterian Church, Somerset v. Mize, 181 Ky. 567, 205 S. W. 674, 2 A. L. R. 1237; O'Hearn v. O'Hearn, supra. This rule is the basis of the expression, "necessary implication", used in our cases. For, it is only when an implication is "necessary" that it will be made. A "necessary implication" is an implication forced by the words in which the will is written and not an implication made because without it there is no disposition of that part of the estate.

What do we find in this will? As to what is to be done after the death of the widow and after the percentages to the two daughters and the granddaughter have thereby been increased, the will is silent. Some of the possible distributions that could be made in this situation are that the income could be accumulated during the lifetime of the longest lived grandchild and paid over upon his death to the issue of grandchildren, per stirpes or per capita. Another possibility would be to distribute income per stirpes to the grandchildren. Another possibility would be to distribute income per capita to the grandchildren. These possibilities leave out of consideration what is to be done with the income of a daughter or granddaughter upon her death. Is this income to be accumulated, paid out to the grandchildren per capita or per stirpes, or to be divided between the surviving sister and the grandchild? Likewise, what is to become of the granddaughter's share? We can at best only guess

the intent of the testator and under the rule heretofore cited this is not permitted.

As to the trust for the education of the testator's grandchildren, it cannot survive. It is not a charitable trust since its objects are identified and consist of the testator's grandchildren. It is also void for remoteness since it would have as its beneficiaries unidentified grandchildren born after the death of the testator, who take no vested interest, with respect to whom it would be possible that trust funds be expended more than twenty-one years after birth. Another reason for holding that this trust cannot survive is that is is dependent upon the continuation of the trust limitations which we have already held void for remoteness. We think that this trust provision is so inextricably bound up with the continuance of these limitations that when they fall this trust must also fall. So, the 10 per cent passes as intestate property.

The result of all we have said is that we overrule the assignments of error of the guardians ad litem and affirm the decree of the Chancellor, except as modified in regard to the educational trust.

Hickerson, J. and Avery, P.J., (Western Section), concur.