IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 27, 2000 Session

## IN RE: ESTATE OF ANNIE CLARE HAMILTON, ET AL. v. WALTER DEWITT MORRIS, ET AL.

**A Direct Appeal from the Chancery Court for Dyer County**
**No. 97P111     The Honorable J. Steven Stafford, Judge**

---

**No. W1998-00191-COA-R3-CV - Filed February 13, 2001**

---

Proponents of 1992 will of testatrix offered the will for probate, and three beneficiaries of testatrix's 1987 will filed a complaint contesting the 1992 will. Proponents of the 1992 will filed a response to the complaint contesting the 1992 will which, *inter alia*, denies that the 1987 will is the last will and testament of the testatrix. The chancellor granted summary judgment against the proponents of the 1992 will, holding that the will was void by virtue of proponents' undue influence on testatrix. The chancellor also granted summary judgment for residuary beneficiary of the 1987 will and admitted the 1987 will to probate as the last will and testament of the testatrix. Appellants, the proponents of the 1992 will and contestants of the 1987 will, have appealed.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY KIRBY LILLARD, J., joined.

Thomas H. Strawn, Dyersburg, William S. Hollis, Lexington, South Carolina, For Appellants

Wilkerson Gauldin & Hayes, Dyersburg, For Appellees, Katherine Evans and John E. Gauldin, III

Olie Phillips, Jackson, For Appellees, Olie Phillips, Virginia Lamb and Mary Sugg Baker

Conley Campbell Moss Smith, Union City, For Appellee Freed-Hardeman University

### OPINION

This is a will contest case involving two wills of Annie Clare Hamilton, Testatrix. Appellants, Walter Dewitt Morris and Jo Ann Morris Holton, brother and sister, and blood relatives of the Testatrix, are beneficiaries under Testatrix's 1992 will (the "1992 Will"). Appellees, Katherine G. Evans, John E. Gauldin, III, and Freed-Hardeman University, are beneficiaries under

Testatrix's 1987 will (the "1987 Will")[1]. Appellees challenged the validity of the 1992 Will based, *inter alia*, on the undue influence of Appellants. Appellants likewise challenged the validity of the 1987 Will based on the undue influence of Attorney Jimmy Evans, another beneficiary under the 1987 Will.

From a review of the voluminous record, which reveals what can be described as a labyrinthine procedural process, we glean the following salient facts:

When Annie Clare Hamilton died in 1997, she left an estate valued at over $1,000,000. During her lifetime, Ms. Hamilton executed four (4) wills, of which only the last two, the 1987 and 1992 Wills, are at issue here. The 1987 Will left a large portion of Ms. Hamilton's estate to Attorney Jimmy Evans, who was apparently Ms. Hamilton's friend and advisor. Mr. Evans did not draft the 1987 Will.[2]

Before Ms. Hamilton executed her 1992 Will on October 13, 1992, she partially executed a codicil to the 1987 Will on May 30, 1992. The record indicates that Attorney John Palmer drafted the Codicil according to Ms. Hamilton's wishes. In his deposition, Mr. Palmer testified that after Ms. Hamilton signed the Codicil, he asked her "if it was her intent to delete Evans and add her relatives to her Will." Ms. Hamilton apparently responded, "I don't want to take Jim Evans out!" Ms. Hamilton never fully executed the document.

Then, on October 13, 1992, Ms. Hamilton executed a Will which left the bulk of her estate to Appellants, while leaving Mr. Evans only $25,000 "for services rendered," a fraction of the total bequests to Evans in the 1987 Will. Mr. Palmer drafted the 1992 Will but had nothing to do with its execution.[3]

The trial court granted Appellees' Motion for Summary Judgment which sought to invalidate the 1992 Will for undue influence. The court found that a confidential relationship existed between Ms. Hamilton and the Appellants:

> Again, in order to begin the proper analysis of this case, since undue influence is alleged, we must first ascertain whether there was a confidential relationship. . . . I believe it was May of 1992, that Mr. Morris and Mrs. Holton were granted an unrestricted Power of Attorney along with Jimmy Mann Evans. Mr. Palmer discussed that in depth in his deposition. Based upon that fact, and based upon the fact that any prior wills that had been executed by Mrs. Annie Clare

---

[1] We note that the Phillips Street Church of Christ was also a beneficiary under the 1987 will, but apparently did not seek to share in Ms. Hamilton's estate and is not a party to this case.

[2] The record indicates that Attorney Ray Ashley drafted the 1987 Will.

[3] Ms. Hamilton was not present when Mr. Palmer prepared the 1992 Will in his offices.

Hamilton did not leave any gifts to Mr. Morris and Mrs. Holton, The Court has determined that in fact a confidential relationship did exist between Mr. Morris, Mrs. Holton and Annie Clare Hamilton.

The trial court found no evidence that Mrs. Hamilton received any independent legal advice regarding the 1992 Will, and noted that the terms of that will were inconsistent with Mrs. Hamilton's earlier wills and with her comments at the failed execution of the Codicil. Based upon these findings, the trial court held the 1992 Will to be a product of the undue influence of Appellants Morris and Holton.

Having invalidated the 1992 Will, the trial court granted Appellee Freed-Hardeman's Motion for Summary Judgment as to the 1987 Will, ruling that Appellants had no standing to contest the will. The trial court then admitted the 1987 Will to probate. The court explained:

> [B]ased upon the proof presented and the recitation of the facts which are uncontroverted for purposes of this motion - - And that is, that Mr. Evans, for purposes of this motion, exerted undue influence on the testator - - The Court finds that this partial invalidity as to any gifts made to Mr. Evans or to Mr. Evans' family would not invalidate the Will. Ms. Hamilton went to great lengths in this particular case by providing that any gift that proved to be invalid would pass to the residuary beneficiary. There's been no proof in this case, . . . that either Freed Hardeman or the Phillips Street Church of Christ did anything improper, or that Jimmy Evans was their agent. . . . If you strike out any gifts made to Mr. Evans or his family, the Will still provides for the transfer of all of Ms. Hamilton's property.
>
> *     *     *
>
> So, in essence, The Court is finding that as a matter of law the Will, the 1987 Will of Annie Clare Hamilton, is a valid document. And The Court is also finding, as a matter of law, that any partial intestacy that may be caused by any undue influence on the part of Jimmy Evans in having this Will drafted would not revoke the Will nor would it have any effect upon any gift made to Freed Hardeman University or Phillips Street Church of Christ for the simple reason there is no connection that's been shown, no agency, no relationship of any kind.

The trial court made its judgment for Freed-Hardeman and the admission of the 1987 Will to probate, a final judgment pursuant to Tenn.R.Civ.P. 54.02. Mr. Morris and Ms. Holton appeal the trial court's orders granting summary judgment on the 1992 Will and the 1987 Will, as well at the court's order admitting the 1987 Will to probate.

-3-

We believe the issues presented in this case are: (1) Whether the trial court erred in granting summary judgment invalidating the 1992 Will; (2) Whether the trial court erred in admitting the 1987 Will to probate; (3) Whether the Appellants have standing to contest the 1987 Will; (4) Whether the trial court properly found that allowing Testatrix's attorney to testify did not violate attorney-client privilege; and (5) Whether the trial court erred in denying Appellants' motion for a new trial based on newly discovered evidence.

A motion for summary judgment should only be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.03. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth ***specific facts*** showing that there is a genuine issue of material fact for trial.

*Id.* at 210-11 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *See Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

## Attorney-Client Privilege

Because our holding vis-a-vis the 1992 Will is dependent upon the testimony of Attorney Palmer, we address the issue of attorney-client privilege first. Appellants assert that the trial court erred in ordering Attorney John Palmer to testify about what they claim are "privileged facts." They claim that, when they communicated Ms. Hamilton's wishes regarding the 1992 Will to Mr. Palmer, they were acting as her agents and are entitled to assert attorney-client privilege. Appellants direct us to the case of *Swindler & Berlin v. U.S.*, 524 U.S. 399 (1998), in which the United States Supreme Court held that the attorney-client privilege survives the death of the client. While we do not dispute the holding in *Swindler*, we do not believe that case addresses the issues the instant case presents.

-4-

In *Swindler*, the United States Supreme Court was asked to rule on whether the Office of the Independent Counsel, through a grand jury, could subpoena notes Attorney James Hamilton took during his meeting with Deputy White House Counsel, Vincent W. Foster, Jr. *See id.* at 401. Mr. Foster consulted Mr. Hamilton, an attorney with Swindler & Berlin, to discuss legal representation regarding investigations into the White House Travel Office scandal. *See id.* In *Swindler*, the Court engages in a lengthy discussion of the attorney-client privilege, and notes that the majority jurisdictions addressing the privilege have done so in the context of testamentary law. *See id.* at 404. The Court noted that most courts presume that the privilege survives the death of the client, but they view testamentary disclosure of communications as an exception to the privilege. *Id.* The *Swindler* Court quoted from *United States v. Osborne*, 561 F.2d 1334, 1340 (9th Cir. 1977):

> [T]he general rule with respect to confidential communications . . . is that such communications are privileged during the testator's lifetime and, also, after the testator's death unless sought to be disclosed in litigation between the testator's heirs. . . .

524 U. S. at 405 (citations omitted). The Court went on to say that, "The rationale for such disclosure is that it furthers the client's intent." *Id.*

The parties have not cited, nor has our research revealed, a Tennessee case dealing with the precise point before us. However, although "the privilege accorded certain communications between . . . attorney and client, has been long and frequently upheld by the Courts of this State, it has also been frequently recognized that there are many exceptions to this privilege." *Hazlett v. Bryant,* 241 S.W.2d 121, 123 (Tenn. 1951).

In *Glover v. Patten*, 165 U.S. 394 (1897), a case which has not been overruled in over one-hundred years, the United States Supreme Court set out what we believe is the applicable rule in the case at bar:

> . . . we are of the opinion that, in a suit between the devisees under a will, ***statements made by the deceased to counsel respecting the execution of the will, or other similar document, are not privileged***. While such communications might be privileged if offered by third persons to establish claims against an estate, they are not within the reason of the rule requiring their exclusion, ***when the contest is between the heirs or next of kin.***

165 U.S. at 406 (emphasis added).

81 Am.Jur.2d *Witnesses* § 389 states:

**Factors affecting applicability; client's death**

Where the client is dead and the controversy arises concerning the validity of the deceased client's will, or between the claimants thereunder, no privilege exists as to communications between the testator and his attorney concerning the drafting of a will. Thus, communications by a client to the attorney who drafted his will, concerning the will and transactions leading to its execution, generally are not, after the client's death, protected as privileged communications in a suit between the testator's heirs, devisees, or other parties who claim under him, although there is authority for the proposition that the privilege protecting a client's communications to the attorney who drew his will may be invoked against claimants adverse to the interests of the client, his estate, or his successors.

Appellants assert that this is an "inter-dispute" between heirs and/or devisees versus non-heirs and/or non-devisees, and that, therefore, the attorney-client privilege is not waived. We must disagree. The allowance of the exception is to help establish the intent of the testatrix or testator, and we can see no reason for a distinction made by Appellants as to the disputes between those designated as heirs, devisees, non-heirs, or non-devisees. The testamentary exception should be applied to such disputes concerning all potential beneficiaries.

## The 1992 Will

Appellants next contend that the trial court erred in granting summary judgment in favor of the Appellees on the issue of validity of the 1992 Will. We have said that "[i]nvalidating a will because of undue influence is generally not a simple undertaking." *Mitchell v. Smith*, 779 S.W.2d 384, 388 (Tenn. Ct. App. 1989). The most common way of establishing the existence of undue influence is "by proving the existence of suspicious circumstances warranting the conclusion that the will was not the testator's free and independent act." *Id.* Three of the most frequently relied upon "suspicious" circumstances are: (1) a confidential relationship between the testator and the beneficiary; (2) the testator's poor physical or mental condition; and (3) the beneficiary's involvement in the procurement of the will in question. *See id.*

Other recognized suspicious circumstances include: (1) secrecy concerning the will's existence; (2) the testator's advanced age; (3) the lack of independent advice in preparing the will; (4) the testator's illiteracy or blindness; (5) the unjust or unnatural nature of the will's terms; (6) the testator being in an emotionally distraught state; (7) discrepancies between the will and the testator's expressed intentions; and (8) fraud or duress directed toward the testator.

*Id.*

Under Tennessee law, as in most jurisdictions, a presumption of undue influence arises where the dominant party in a confidential relationship receives a benefit from the other party. *See Matlock v. Simpson*, 902 S.W.2d 384, 386 (Tenn. 1995)*; Crain v. Brown*, 823 S.W.2d 187, 194 (Tenn. Ct. App. 1991). A person who is "authorized to act on behalf of another by virtue of an unrestricted power of attorney has a confidential relationship with the person who executed the power of attorney." *Mitchell*, 779 S.W.2d at 389. Only where the dominant party can show that the transaction was fair by clear and convincing evidence, can that party overcome the presumption of undue influence. *See id.* In the case of a will contest, that evidence can be that the testator received independent, legal advice concerning the contents of the will. *See Crain*, 823 S.W.2d at 194.

The basis of the trial court's ruling in this case is that Appellants were involved in a confidential relationship with Ms. Hamilton and that the 1992 Will was a product of Appellants' undue influence. We agree. The trial court found that a confidential relationship existed between Ms. Hamilton, Mr. Morris and Ms. Holton by way of a general power of attorney, and found that no evidence was presented to determine the fairness of the transaction. In its findings, the court said:

> There is no evidence to show that this transaction was fair. There is no evidence to show that there was any independent legal advice given to Annie Claire Hamilton or that she had the opportunity for any independent legal advice.
>
> In fact, the evidence tends to show that the 1992 Will, if anything. . . was contrary to her wishes by the statement she made when she failed to execute the Codicil in June of 1992. . . .

There was no evidence to rebut the presumption of undue influence as to the 1992 Will, let alone clear and convincing evidence. Almost all the factors enumerated above which give rise to the presumption of undue influence are present in this case: 1) the Appellants were involved in a confidential relationship with the Testatrix, as her attorneys in fact; (2) the Testatrix was not in the best of physical health; (3) Mr. Morris was involved in the procurement of the will in question[4]; (4) the Testatrix was very old at the time she executed the 1992 Will; (5) there is no evidence that the Testatrix received independent advice in preparing the 1992 Will and; (6) there are discrepancies between the 1992 Will and the Testatrix's intentions as expressed at the failed execution of the Codicil.

---

[4] In her deposition, Margaret Smith said she believed that Ms. Hamilton executed the 1992 Will under pressure from Mr. Morris, and testified that Mr. Morris was present at the Will's execution and asked her to witness the 1992 Will. In *Taliaferro v. Green*, 622 S.W.2d 829, 837, this Court noted that, although a presumption of undue influence will not generally arise just because a beneficiary acts as a "mere messenger between the testator and the testator's attorney," this rule "does not apply where there has been any activity directly connected with the actual execution of the will." The *Taliaferro* Court went on to note that there was evidence that the beneficiary was present at the execution of the will in question; a fact which, when combined with the beneficiary's close family relationship to the testator, "could have led the jury to determine that there was undue influence." *Id.*

In their brief, Appellants point to Attorney Palmer's deposition for the proposition that Mr. Palmer drafted the 1992 Will out of the presence of Appellant Morris. Appellants also claim that Mr. Palmer met with the Testatrix "multiple times privately and fully regarding her 1992 Will." If anything, we believe Mr. Palmer's deposition supports the contrary proposition on both counts:

Mr. Smith: Did you prepare or did your office type Exhibit #3, the purported Will, prior to October 13, 1992?

Mr. Palmer: Well, the way my note reads, I am not sure. It says, "I have dictated proposed short Wills for them to discuss with Mrs. Hamilton." It uses the word plural. So, I may, based on some phone conversation, I may have prepared - -

\* \* \*

Mr. Smith: Who was present with Mr. Morris when he came to your office to retrieve that document?

Mr. Palmer: I don't have a recollection of that.

Mr. Smith: Do you recall your conversation with him on that date?

Mr. Palmer: I do not.

Mr. Smith: Then is it my understanding that your preparation of that document was based upon the direction you received from Slater Hollis?

Mr. Palmer: No, I think I probably. ***I would have talked to Walter [Morris].*** According to my note it looks like, based on some phone conversations, I probably prepared more than one Will. Because they started out talking about just cancelling all prior Wills.

Mr. Smith: That's what I understood your notes to say.

Mr. Palmer: I assume I prepared more than one. I think that I probably talked to Walter when he came in. He told me no. ***He probably said, "well, this is what Mrs. Hamilton wants." Based on what he told me, I probably went ahead and handed him this Will.***

(emphasis added).  Later in his deposition, Mr. Palmer indicated that, although he drafted the 1992 Will, it was not his "style."

> Mr. Palmer:  It's not my style but somebody obviously had told me to, you know, do something short and to the point. Ordinarily, I'd put more information in there.  Like I would have the statutory powers and some other things.  And that's not in here.  I don't know why that is.

The record establishes that Mr. Palmer later sought to withdraw from the effort to probate the 1992 Will.  In a letter from Mr. Palmer to Mr. Hollis dated March 15, 1995, Mr. Palmer wrote:

> As I have stated to you previously, I do not feel comfortable in participating in an effort to probate Mrs. Hamilton's Will of October 13, 1992.  I am not comfortable with the appearance of the Will itself insofar as the signature of Mrs. Hamilton is concerned; I am not comfortable with statements Mrs. Lamb has made; and I feel certain that probate of this Will will be contested and that I will be called as a witness.

In his deposition, Mr. Palmer explained his discomfort with probating the 1992 Will.  He said, "I didn't like being asked to prepare papers for a probate before somebody dies."

In their brief, Appellants appear to argue that the legal presumption of undue influence does not arise where the relationship between the parties is one of "close family."  While we agree that this statement correctly represents Tennessee law, we do not believe that the relationship between the Testatrix and Appellants can be characterized as one of "close family."  The Tennessee cases which address this issue mostly deal with husband-wife and parent-child relationships.  *See, e.g., Kelly v. Allen*, 558 S.W.2d 845, 848 (Tenn. 1977)(parent-child relationship); *Hammond v. Union Planters National Bank*, 222 S.W.2d 377, 383 (Tenn. 1949)(husband-wife relationship); *Bills v. Lindsay*, 909 S.W.2d 434, 440 (Tenn. Ct. App. 1993)(parent-child relationship).  One case, *Solari v. Albertine*, 193 S.W.2d 111 (Tenn. Ct. App. 1945), addresses the grandparent-grandchild relationship.  However, the *Solari* Court goes to great lengths to explain that the grandmother had raised her granddaughter after the granddaughter was orphaned, and that the granddaughter moved back into her grandmother's home following her grandmother's stroke to care for the ailing woman.  *See id.* at 144-15.

Appellants cite another case, *Hollis v. Thomas*, 303 S.W.2d 751 (Tenn. Ct. App. 1957), as support for the argument that the mere <u>existence</u> of a power of attorney will not raise the presumption of undue influence unless that power of attorney is utilized.  While the *Hollis* Court does note that the beneficiary under the challenged will "never made any use of the authority granted," the Court rests its decision that no presumption of undue influence arose on the fact that,

although the beneficiary was "only a foster child," the relationship between the parties "was that of parent and child." *Id.* at 760. In the instant case, Appellants are the children of Testatrix's cousin - hardly the type of relationship the cases above contemplate. Given that Appellants themselves have indicated that they only visited the Testatrix three or four times a year, there appears to be little evidence that would render the situation in the case at bar similar to the situation in *Solari*.

Even assuming, *arguendo*, that Appellants did have the type of close family relationship Tennessee courts contemplate, we believe that the existence of the suspicious circumstances above is enough to raise the presumption. As this Court noted in *Taliaferro*:

> Where, however, the contestant shows the existence of suspicious circumstances *such as* a confidential relationship in combination with the beneficiary's involvement in procuring the will, or in combination with impairment of the testator's mental capacity, there arises the presumption of fraud or undue influence. . .

622 S.W.2d at 835-36 (emphasis added). *See also Mitchell*, 779 S.W.2d at 389-90 (noting that, even without evidence of the confidential relationship between beneficiary and testator, "the contestants introduced evidence of enough other suspicious circumstances to create a jury issue.") Even if the Appellants held no power of attorney for the Testatrix, there is ample evidence to be found in this record which supports the presumption of undue influence as to the 1992 Will. For these reasons, we hold that the trial court correctly granted Appellees' Motion for Summary Judgment based on the unrebutted presumption of undue influence.

**The 1987 Will**

Appellants next urge us to hold that the trial court incorrectly granted Appellees' Motion for Summary Judgment which ultimately led to the admission of 1987 Will to probate. The thrust of Appellants' argument is that, since the trial court found there was a presumption of undue influence as to the bequests to Attorney Evans, the entire will should be declared invalid. Based upon our review of the law of wills in Tennessee, we affirm the trial court's ruling and hold that a presumption of undue influence does not invalidate gifts to "innocent" beneficiaries under the will in question.

Whether a trial court may invalidate only that portion of a will which is tainted by undue influence appears to be an issue of first impression in Tennessee. There are, however, cases which address the partial invalidity of wills under circumstances other than undue influence. For example, in *Ross v. Stiff*, 338 S.W.2d 244 (Tenn. Ct. App. 1959), this Court addressed a will in which some of the bequests were void under the Rule Against Perpetuities. The *Ross* Court wrote:

> Since we hold that § 13 and § 14 of the will are void for remoteness, there remains then but a consideration of the consequences of this action. As indicated in *Armstrong v. Douglass*, 89 Tenn. 219, 14 S.W. 604, 10 L.R.A. 85, the primary testamentary

-10-

intent of a testator will not necessarily be pulled down by the invalidation of one or more of the provisions by which that general intent is manifested. ***This will only result when it appears that the invalid limitation is such an essential part of the general scheme of the will that the several parts of the devise are inseparable and the whole must be adjudged void.***

***Id.*** at 251 (emphasis added). ***See also Armstrong v. Douglass***, 14 S.W. 604 (Tenn. 1890).

In keeping with cases such as ***Ross***, we believe that the correct rule regarding invalidating a will for undue influence is clearly stated in 1 ***Pritchard on the Law of Wills and Administration of Estates*** § 128 (5th ed. 1994):

> **§ 128. Fraud and undue influence do not necessarily invalidate whole will.**
>
> If the fraud or undue influence by which a will is procured extends to the whole will, although committed by only one of the several beneficiaries, or even though the person benefitted is entirely innocent of any participation in it, or if the provisions affected by the fraud be inseparable from the rest, the whole will is void. But if the fraud extends only to a part of the will which is of a separable character, the portions not so affected will be good.

Such partial invalidation is supported by the rule that "[u]ndue influence presupposes a mind of testamentary capacity." ***Parham v. Walker***, 568 S.W.2d 622, 624 (Tenn. Ct. App. 1978). To totally invalidate a will for the undue influence of one beneficiary where the evidence strongly points to the innocence of the other beneficiaries would be inconsonant with the above rule.

In the case at bar, we find no evidence that would justify making an exception to the rule regarding partial invalidity. There is evidence in the record of Testatrix's intent to leave money to Freed-Hardeman and the other Appellees. Appellants presented no evidence that any of the beneficiaries other than possibly Jimmy Evans exerted undue influence upon Ms. Hamilton, and the sections in the 1987 Will relating to Jimmy Evans are clearly separable from those relating to the other beneficiaries.

Finally, and perhaps most importantly, we must construe the 1987 Will in light of the statutory and common law presumption against intestacy. ***See, e.g.,*** T.C.A. § 32-3-101 (1984); ***Putnam v. Robertson***, 205 S.W. 309, 312 (Tenn. 1918); ***In re Tipler***, 10 S.W.3d 244, 249 (Tenn. Ct. App. 1998); ***Chaille v. Warren***, 635 S.W.2d 700, 702 (Tenn. Ct. App. 1982). Ms. Hamilton's 1987 Will provides for the distribution of <u>all</u> of her property, and expressly provides that if a gift to any specific beneficiary is revoked, their benefits pass under the residuary clause. To hold her 1987

Will invalid, we would clearly overlook Ms. Hamilton's clear expression of intent not to die intestate, as well as the law as it exists in Tennessee.

**Standing**

The next issue this case presents is that of standing. We believe this issue can be resolved by clearing up what we perceive as confusion regarding the trial court's use of the term, "standing." Subsequent to its ruling that there was undue influence as to gifts in the 1987 Will to Jimmy Evans, the trial court found:

> *. . . The Court is finding that as a matter of law the Will, the 1987 Will of Annie Clare Hamilton, is a valid document.* And The Court is also finding, as a matter of law, that any partial intestacy that may be caused by any undue influence on the part of Jimmy Evans in having this Will drafted would not revoke the Will nor would it have any effect upon any gift made to Freed Hardeman University or Phillips Street Church of Christ for the simple reason there is no connection that's been shown, no agency, no relationship of any kind.
> As I stated earlier, there have been no allegations made that Ms. Hamilton lacked capacity, that this Will was procured by fraud, or that there were any other problems with the Will or it's [sic] execution. The only assertion that has been made is the undue influence on behalf of Mr. Evans, and The Court finds that that does not rise to a level sufficient to invalidate the 1987 Will.
> *The Court's going to grant your Motion for Summary Judgment as to the standing issue which would be dispositive of this case.*

(emphasis added).

The trial court found, <u>as a matter of law</u>, that any undue influence of Jimmy Evans did not invalidate the 1987 Will. The 1987 Will, as noted above, made provision for invalidated gifts. Because of the way the 1987 Will was drafted, the only means by which the Appellants could share in Ms. Hamilton's estate was if the trial court invalidated the <u>entire</u> 1987 Will. Since Appellants failed to persuade the trial court that, as a matter of law, Evans exerted undue influence that invalidated the <u>entire</u> 1987 Will, the court, given its ruling on the legal question, found that Appellants had no basis, or "standing," to further contest the Will. Since the trial court found that any undue influence on the part of Evans would have no effect on the residuary clause, the court correctly ruled that this totally eliminated Appellants as beneficiaries of Ms. Hamilton's estate and, thus, they lacked "standing" to recover.

**New Evidence**

Finally, we affirm the trial court's denial of Appellants' Motion for a New Trial. That motion was based upon alleged new evidence regarding the execution of the 1987 Will. However, in reviewing the record in this case, we do not believe that Appellants' evidence regarding the execution of the 1987 Will can be considered "new."

Tennessee law provides for a new trial based on newly discovered evidence only under very limited circumstances. That rule, as stated in *Crain v. Brown*, 823 S.W.2d 187 (Tenn. Ct. App. 1991), is:

> Generally, in order for a party to obtain a new trial based on newly discovered evidence, it must be shown that the evidence was discovered after the trial, that it could not have been discovered earlier with due diligence, that it is material and not merely cumulative or impeaching, and that the evidence will probably change the result if a new trial is granted. 20 *Tennessee Jurisprudence*, New Trials §§ 6, 7, 8, 9 and 10.

*Id.* at 192.

Appellants' evidence clearly does not satisfy the due diligence requirement. The evidence at issue here, namely the 1987 Will itself, was admitted into evidence and is a part of the record in this case. Appellants had ample time to discover the alleged problem with the Will's execution and point it out to the trial court long before the close of the trial in this matter.

Accordingly, the judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are assessed to Appellants, Walter Dewitt Morris and Jo Ann Morris Holton and their surety.

 

 

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.